STATE OF NEBRASKA, APPELLEE, V. JOHN M. OLSAN, APPELLANT.

436 N.W.2d 128

Filed February 17, 1989.   No. 88-210.

James C. Stecker for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

SHANAHAN, J.

In the district court for Platte County, a jury found John M. Olsan guilty of four felonies—robbery, conspiracy to commit robbery, first degree false imprisonment, and use of a firearm in the commission of a felony (robbery). The district court sentenced Olsan to terms of imprisonment for the convictions. Olsan claims that reversible error exists (1) as the result of insufficient evidence to sustain the verdicts; (2) in allowing Olsan to be found guilty on the charges of robbery and false imprisonment in violation of the double jeopardy clauses of the U.S. and Nebraska Constitutions; (3) in permitting the prosecution, on cross-examination of Olsan, to adduce certain inadmissible evidence concerning Olsan's prior felony convictions for the purpose of impeachment; and (4) by imposition of excessive sentences.

The site of the robbery was Amigo's restaurant, which also provided a fast-food service. On the evening of October 1, 1987, Stacey Torczon and Matthew Wagoner were working at

Amigo's. Torczon took customer orders at a counter and operated the cash register, while Wagoner, manager of the restaurant responsible for supervision of Amigo's employees, was working in the kitchen as a cook. Around 11:35 p.m., a man entered Amigo's, approached Torczon at the area of the counter and cash register, and mulled over the menu until he selected a large order of "Mexi-fries." The male customer was wearing jeans and a tank top or "muscle tee shirt." While the customer's order was being prepared, the man asked Torczon whether she had a boyfriend or husband and what she would be doing after work. Torczon felt that the customer exhibited "overfriendliness." As she was picking up the customer's order of Mexi-fries, Torczon remarked to Wagoner: "I think this guy's really drunk, he's really weird, he's asking a lot of weird questions." From the kitchen, approximately 20 feet from the cash register, Wagoner glanced at the customer and briefly established eye contact with him. After staying in Amigo's for about 5 minutes, the man left the restaurant.

Michael McMillan entered Amigo's near 11:45 p.m. and ordered a burrito. Consequently, only Torczon, Wagoner, and McMillan were in Amigo's when a male and female entered the restaurant. Both entrants wore a nylon stocking over their heads, preventing observation of many facial features on the entrants. What those in Amigo's did observe was the female entrant brandishing a shotgun, while the male carried a .22-caliber revolver in his hand. According to Wagoner, the gunman ordered: "Don't move, put your hands up." As the female with the shotgun went into the kitchen where Wagoner was located, the male went to Torczon at the cash register, pointed the revolver at her head, and demanded of the terrified Torczon: "Give me all the money." Gun in hand, the male robber grabbed the currency which Torczon had removed from the restaurant cash register in response to the holdup man's demand. As the shotgun-toting woman emerged from the kitchen, she told Torczon, Wagoner, and McMillan to lie on the floor. Recalling the clothing and some of the physical features observed when the previous male customer had ordered Mexi-fries a few minutes earlier, both Torczon and Wagoner at that time recognized the gunman as the previous customer who

had ordered Mexi-fries. Nothing indicated that either of the robbers had drunk alcohol. As the holdup pair were leaving Amigo's, the male yelled to those on the restaurant floor: "Don't move for five minutes."

Police were unable to recover the nylon stockings which covered the robbers' faces, or the guns used for the robbery. There were no fingerprints obtained at Amigo's to identify the robbers. No physical evidence linked Olsan to the robbery. However, from a photo array shown to them 4 to 5 days after the robbery, both Torczon and Wagoner identified Olsan as the robber.

At trial, Torczon and Wagoner testified that the male robber was wearing clothing identical to Olsan's when Olsan ordered Mexi-fries just minutes before the robbery. Another Amigo's customer in the restaurant just before the robbery, a Jeff Heesacker, one of Olsan's neighbors and apparently a longtime acquaintance, recognized Olsan as the man who had ordered the Mexi-fries and talked to Torczon. Heesacker noticed that Olsan appeared to be drunk and staggered in the restaurant. Shortly after Olsan left Amigo's, Heesacker also left the restaurant. McMillan, the Amigo's customer at the time of the robbery, testified that he looked closely at the perpetrator's stocking-covered face during the robbery and later identified Olsan as the gunman-robber.

On direct examination during his case in chief, Olsan recounted an evening of drinking beer and tequila at bars on October 1, the night of the robbery. When Olsan and his cronies concluded their drinking around 11:30 p.m., Olsan went to Amigo's, got an order of Mexi-fries, and awaited a ride from his friends. With his friends, Olsan rode a short distance from Amigo's to a bar, where he was seen by two individuals who testified they saw Olsan at the bar around 11:50 p.m. on the night of the robbery. An employee of the bar testified that Olsan slurred his speech ("I couldn't understand him"), staggered inside the bar, and was intoxicated. After Olsan left the bar, he went to a room and fell asleep. Olsan denied involvement in the events which occurred at Amigo's.

Up to this point in the trial, there had been no reference to Olsan's criminal record. Nevertheless, during cross-

examination of Olsan, the prosecutor asked: "Q. Mr. Olsan, have you ever been convicted of the felony crime called escape? A. Yes. Q. How many times?" Defense counsel objected on the ground of relevance. When the court overruled the objection, Olsan answered: "Three."

After instruction from the court, the jury found Olsan guilty of each crime charged.

## SUFFICIENCY OF EVIDENCE

Olsan contends that the evidence is insufficient to support the verdicts against him.

> In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987).

Without further comment on the obvious, Olsan's contention about insufficient evidence has no merit.

## CLAIM OF DOUBLE JEOPARDY

Olsan's second assignment of error relates to constitutional permissibility of his convictions for robbery and first degree false imprisonment concerning the occurrence at Amigo's. Olsan argues that false imprisonment is a lesser-included offense of robbery, and, therefore, his conviction for both those crimes violates the constitutional prohibition against being twice placed in jeopardy for the same offense. See, U.S. Const. amend. V; Neb. Const. art. I, § 12.

The Nebraska Criminal Code includes: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever," Neb. Rev. Stat. § 28-324(1) (Reissue 1985); and "[a] person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (a) under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury . . . ." Neb. Rev. Stat. § 28-314(1) (Reissue

1985).

In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the U.S. Supreme Court adopted a "test of identity" to determine whether crimes separately charged are actually but one offense and stated: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304.

"A lesser included offense is one which is necessarily established by proof of the greater offense." *State v. Colgrove*, 197 Neb. 375, 376, 248 N.W.2d 780, 781 (1977). To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater offense without simultaneously committing the lesser offense. *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982).

The constitutional prohibition against double jeopardy not only protects against a second prosecution for the same offense after acquittal or conviction, but also protects against multiple punishments for the same offense. *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987); *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). See, also, *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977): "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense."

When a defendant is convicted of both a greater and lesser-included offense, the conviction and sentence on the lesser charge must be vacated. *United States v. Belt*, 516 F.2d 873 (8th Cir. 1975).

In its information, the State charged that Olsan, in the course of events at the restaurant, robbed Amigo's of its money and contemporaneously committed the false imprisonment of Torczon. Under the circumstances, Olsan's argument that false imprisonment is a lesser-included offense of robbery ignores one crucial point: In the crimes charged against Olsan for which he was convicted, the subject matter of the criminal offenses and victims are not identical. It was Amigo's property (money)

that was forcibly and violently taken and Torczon's personal liberty which was restrained under circumstances which terrorized Torczon or exposed her to risk of serious bodily injury in the face of brandished firearms. Consequently, there were different criminal offenses committed against separate victims. The prosecution of Olsan involves distinctly different crimes, separate victims, and convictions for different crimes. If, in one transaction, a defendant commits crimes against separate individuals, the defendant may be constitutionally charged with and convicted of the separate offenses against each of the victims. See, *State v. Hardin*, 199 Neb. 314, 258 N.W.2d 245 (1977); *Jeppesen v. State*, 154 Neb. 765, 49 N.W.2d 611 (1951). Olsan's double jeopardy claim has no merit.

PREJUDICE FROM IMPROPER IMPEACHMENT

Olsan next contends that he was unfairly prejudiced when the court improperly allowed the State to impeach Olsan on cross-examination by the question concerning the number of times that Olsan had been convicted of felonious escape. Admission or exclusion of evidence is a matter for the discretion of the trial court, whose ruling on an evidential question will be upheld unless such ruling constitutes an abuse of discretion. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

Neb. Rev. Stat. § 28-912(1) (Reissue 1985) defines the felony of escape:

A person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but official detention does not include supervision of probation or parole or constraint incidental to release on bail.

Pertinent to Olsan's case, Neb. Evid. R. 609 (Neb. Rev. Stat. § 27-609 (Reissue 1985)) provides in part:

(1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime

shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.

(2) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of such conviction or of the release of the witness from confinement, whichever is the later date.

Almost 3 decades ago, this court commented in *Pierce v. State*, 173 Neb. 319, 330, 113 N.W.2d 333, 341 (1962): "[P]ublic prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial." Lest prosecutors overlook or ignore their duties for an accused's fair and impartial trial, in *State v. Friend*, 230 Neb. 765, 771, 433 N.W.2d 512, 516-17 (1988), we stated: "[I]nstructions to prosecutors on the proper use of prior felony convictions apparently bear repeating."

As noted in *State v. Daugherty*, 215 Neb. 45, 47, 337 N.W.2d 128, 129 (1983):

The purpose of Rule 609 is to allow the prosecution to attack the credibility of a testifying defendant, not to retry him for a separate crime or prejudice the jury by allowing unlimited access to the facts of an unrelated crime, as the court in *Vanderpool* stated [citation omitted]: "The right to inquire as to a previous conviction rests on the statute and is for the purpose only of affecting the credibility of the witness. A fair interpretation of the statute seems to permit the question whether the witness has ever been convicted of felony. If the witness answers in the affirmative the inquiry should end there, and thereafter it is improper to inquire into the nature of the crime or the details of the offense." [Quoting *Vanderpool v. State*, 115 Neb. 94, 211 N.W. 605 (1926).]

See, also, *State v. Johnson*, 226 Neb. 618, 621, 413 N.W.2d 897, 898 (1987): "Once having established the conviction, the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent

in prison as a result thereof." See, further, *State v. Friend, supra* at 772, 433 N.W.2d at 517:

> There is no question but that a prosecutor's further inquiry as to the nature of the offense after a defendant has admitted his or her conviction of a felony is improper. Once the defendant answers in the affirmative a question as to a prior conviction, further inquiry is not permitted.

Concerning an inquiry into the number of a defendant's felony convictions, this court has stated: "When a defendant testifies on his own behalf, the prosecuting attorney may question him as to his previous convictions for felony and the number thereof, but no details as to the nature of the charges or other details may be elicited or received." *State v. Boss*, 195 Neb. 467, 473, 238 N.W.2d 639, 644 (1976), decided after December 31, 1975, the effective date of the Nebraska Evidence Rules; see Neb. Evid. R. 1102 (Neb. Rev. Stat. § 27-1102 (Reissue 1985)). See, also, *State v. Craig*, 192 Neb. 347, 220 N.W.2d 241 (1974) (if a defendant admits the correct number of convictions, the State shall not inquire into the nature of the charge in any conviction). Further, in *Latham v. State*, 152 Neb. 113, 40 N.W.2d 522 (1949), this court discussed the scope of inquiry initiated by the State on cross-examination of a defendant as a witness in the defendant's case. After observing that proper cross-examination directed toward impeachment of a defendant forbids inquiry into the nature of the charge of which the defendant was previously convicted, the details of the conviction, and the sentence imposed, the *Latham* court stated:

> The purpose of the restricted inquiry permitted [on proper cross-examination of a defendant] is for whatever effect the fact of a previous conviction may have on the credibility of the defendant as a witness, and not for the purpose of tending to show that he is prone to engage in criminal actions.

152 Neb. at 116, 40 N.W.2d at 524.

While current construction of Neb. Evid. R. 609 prohibits mention of the name or identity of the crime in the conviction used for impeachment of a witness, by far the greater number of jurisdictions allow reference to the particular criminal offense underlying the conviction offered for a witness'

impeachment in accordance with rules of evidence substantially similar to Neb. Evid. R. 609. See, *United States v. Moore*, 735 F.2d 289 (8th Cir. 1984); *United States v. Beckett*, 706 F.2d 519 (5th Cir. 1983); *United States v. Gaertner*, 705 F.2d 210 (7th Cir. 1983); *Acevedo v. State*, 467 So. 2d 220 (Miss. 1985); *King v. State*, 468 N.E.2d 226 (Ind. 1984); *State v. Murray*, 310 N.C. 541, 313 S.E.2d 523 (1984); *Stevens v. State*, 671 S.W.2d 517 (Tex. Crim. App. 1984); *State v. Coe*, 101 Wash. 2d 772, 684 P.2d 668 (1984); *People v. Bennette*, 56 N.Y.2d 142, 436 N.E.2d 1249, 451 N.Y.S.2d 647 (1982); *State v. Williams*, 656 P.2d 450 (Utah 1982); *State v. Connor*, 403 So. 2d 678 (La. 1981); *Bradley v. State*, 635 P.2d 1161 (Wyo. 1981); *People v. McClellan*, 71 Cal. 2d 793, 457 P.2d 871, 80 Cal. Rptr. 31 (1969). A significantly smaller number of jurisdictions follow a rule similar to this court's construction of Neb. Evid. R. 609. See, *State v. Geyer*, 194 Conn. 1, 480 A.2d 489 (1984); *Com. v. Richardson*, 674 S.W.2d 515 (Ky. 1984); *State v. Rutchik*, 116 Wis. 2d 61, 341 N.W.2d 639 (1984); *McAmis v. Commonwealth*, 225 Va. 419, 304 S.E.2d 2 (1983).

Applying long-established Nebraska precedent to the cross-examination of Olsan, we conclude that the prosecutor transgressed the mandatory boundaries of Neb. Evid. R. 609 for impeachment.

The State, conceding the prosecutory transgression, contends that Olsan failed to make a timely objection to that part of the cross-examination in issue and, therefore, waived any objection to admissibility of Olsan's answer relative to his convictions for escape. See *State v. Archbold*, 217 Neb. 345, 352, 350 N.W.2d 500, 505 (1984): "If a party does not make a timely objection to evidence, the party waives the right on appeal to assert prejudicial error." See, also, *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987). We reject the State's contention regarding an evidential waiver. While there was no objection to the prosecutor's initial question, "[H]ave you ever been convicted of the felony crime called escape?" defense counsel timely objected to the next question, "How many times?" The prosecutor's second question concerning the number of convictions was undeniably directed to the content of the first question and, consequently,

interconnected with Olsan's answer that he had been convicted of escape. While defense counsel could have properly objected to the first question, which specified the felony in Olsan's previous convictions, counsel's failure to object to the initial question did not waive a subsequent objection to the prosecutor's blatantly improper evidential inquiry into the number of escape convictions. Given the state of the record, defense counsel's objection to the prosecutor's inquiry, that is, the number of Olsan's prior escape convictions and the lack of qualification of the convictions regarding the 10-year limitation specified in Neb. Evid. R. 609(2), was valid and should have been sustained.

The State suggests that the trial court's overruling Olsan's valid objection is harmless error. In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988); *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). If there is some incorrect conduct in a jury trial which, on a review of the entire record, did not materially influence the jury in its verdict adverse to a substantial right of the appellant, the error is harmless. *State v. Watkins, supra.*

Recalling our previous admonitions regarding proper use of Neb. Evid. R. 609 and also keeping in mind our reluctance to apply the doctrine of harmless error to a prosecutor's improper impeachment use of a defendant's prior conviction, see *State v. Friend*, 230 Neb. 765, 433 N.W.2d 512 (1988), we turn our attention to the evidential question whether the trial court's ruling was harmless error or resulted in unfair prejudice to a substantial right of Olsan. See Neb. Evid. R. 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1985)).

While Olsan's credibility was essential to his alibi defense, the prosecutor's improper cross-examination went beyond an attack on Olsan's credibility and introduced the injurious implication of Olsan's extensive criminal background. In a jury trial, adduction of evidence concerning a defendant's prior conviction for escape inherently contains information that the

witness was officially detained on account of criminal activity, with or without subsequent conviction or as the result of incarceration after conviction. Because the criminal activity underlying Olsan's detention necessary for an escape is undisclosed, Olsan's escape from official detention may prompt a jury to surmise that he has been implicated in at least six instances of criminal activity—the three escapes and three occasions of detention related to some criminal activity, whether such criminal activity included felonious conduct or criminal misconduct involving dishonesty or falsehood. In this manner the prosecutor injected the innuendo that Olsan is indelibly branded with an extensive background of criminal misbehavior indicative of a propensity to commit the crimes charged. In such a setting, the jury may have attached some evidential weight to Olsan's escape convictions as proof that he likely committed the crimes presently charged. Courts and counsel are aware of the peril to a defendant's fair trial through inadmissible evidence concerning other crimes, wrongs, or acts which establish a person's character or traits and action in conformity with such character or traits. See Neb. Evid. R. 404(1) (Neb. Rev. Stat. § 27-404(1) (Reissue 1985)). Under the circumstances, prosecutory exploration into the nature of Olsan's prior convictions ravished the rationale of Neb. Evid. R. 404, which is equally applicable to Neb. Evid. R. 609 in view of this court's statements concerning a defendant's impeachment by evidence of a prior conviction. See *Latham v. State*, 152 Neb. 113, 116, 40 N.W.2d 522, 524 (1949): Impeachment by prior conviction is "not for the purpose of tending to show that [the defendant] is prone to engage in criminal actions." At the risk of delving into dicta, were evidence of Olsan's escape convictions relevant, such evidence would be excludable by Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)): "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *State v. Atwater*, 193 Neb. 563, 565-66, 228 N.W.2d 274, 275 (1975):

The prosecution knew that the commission of other crimes by the defendant was irrelevant, improper, and inadmissible in its case. While the evidence of defendant's guilt herein is conclusive, this is a transgression which cannot be condoned. The evidence against the defendant was more than adequate. Possibly in the past we have been too lenient in excusing these transgressions under the guise of harmless error, and the prosecution has concluded that anything goes. Defendants must be given fair trials, and it is the responsibility of the prosecution to see that each defendant receives one. Harmless error is intended to cover those inadvertent slips, which occasionally creep into a hotly contested trial, which do not severely prejudice the rights of the defendant. Harmless error should never be applied in those instances where the prosecution deliberately, or because of very careless procedures, injects prejudicial error into the proceedings.

Recently, in *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987), we reversed a defendant's conviction because the prosecutor had exceeded the proper scope for cross-examination of the defendant regarding a previous conviction used for impeachment. In *Johnson*, we noted that

the credibility of the defendant as a witness was the critical issue in this case. The so-called "poison" having been injected into the case by the prosecutor, either deliberately or because of a lack of knowledge of the rules of evidence, it is problematical whether the defendant could have received a fair trial.

It must be impressed upon the State that this court will not continually search for ways to extricate the prosecution from the results of its own misconduct by labeling such action "harmless error."

226 Neb. at 621-22, 413 N.W.2d at 899.

Even more recently, in *State v. Friend, supra*, issued on December 30, 1988, we again deplored prosecutory misuse of a defendant's prior conviction as a means to impeach the defendant.

Whether attributable to ignorance or indifference of the Nebraska Evidence Rules, the conduct in Olsan's case

participates in the persistent parade of prosecutory prejudice to a defendant's right to a fair trial, namely, improper impeachment inquiry into a defendant's convictions. For that reason, regretfully, we must repeat the rule for proper impeachment based on Neb. Evid. R. 609: Although the State may elicit information concerning the number of a defendant's convictions within the last 10 years, the State is prohibited from naming or identifying the crime underlying the witness' conviction and from inquiring into or referring to details surrounding the crime or conviction. Accordingly, we cannot condone or disregard the prosecutor's conduct in cross-examining Olsan. The criteria for a proper impeachment pursuant to Neb. Evid. R. 609 have been clearly stated and repeated by this court and must be respected by prosecutors seeking to impeach a defendant through evidence of the defendant's convictions. We hope that our emphatic and renewed disapproval expressed in this case will stem the steady stream of appeals to this court as the result of prosecutory misunderstanding or misapplication of Neb. Evid. R. 609. The district court committed reversible error in permitting cross-examination of Olsan which exceeded the scope allowed under Neb. Evid. R. 609 for impeachment.

## TIME LIMITATION PRESCRIBED BY NEBRASKA EVIDENCE RULE 609(2)

Neb. Evid. R. 609(2) contains a time restriction for the admissibility of a conviction to impeach a witness, namely, a conviction characterized in Neb. Evid. R. 609(1) is inadmissible for impeachment of a witness' credibility if more than 10 years have elapsed since the date of the witness' conviction or since the date on which the witness was released from confinement on account of the conviction, whichever is later. In Neb. Evid. R. 609(2), the 10-year restriction for admissibility of a prior conviction is recognition that temporal remoteness nullifies the probative value of a conviction to be used for impeachment. Consequently, Neb. Evid. R. 609(2) is a policy pronouncement that a conviction older than 10 years lacks probative value concerning a witness' tendency toward truth and veracity and, therefore, is irrelevant to impeach a witness' credibility. Thus, Neb. Evid. R. 609(2) prevents the cumulative effect of old

convictions which shed little light on a witness' credibility.

Previously in this opinion, we have prescribed that a prosecutor may properly inquire whether a defendant's conviction occurred "within the last 10 years." Some might argue that the time limitation or qualification stated in Neb. Evid. R. 609(2) pertains only to admissibility of evidence, a question for the court, and should not be information for a jury's consideration. To buttress that argument, one might contend that the fact of the conviction, not its occurrence within the last 10 years, will have probative value for the jury. Others might argue that the jury should be informed that the defendant's conviction occurred within the last 10 years lest there be some speculation that the prosecutor is foraging into the defendant's distant past which has disclosed only a stale conviction and is, thus, seen as a shabby prosecutory tactic. Whichever argument may be correct, we need not decide, since the 10-year limitation of Neb. Evid. R. 609(2) was not factually presented in Olsan's trial for consideration by judge or jury.

In Olsan's case, the State failed to qualify any conviction regarding the 10-year limitation of Neb. Evid. R. 609(2). Without the temporal qualification required by Neb. Evid. R. 609(2), evidence regarding any conviction of Olsan was irrelevant, and admission of such evidence constituted reversible error.

### A PREVENTIVE PROCEDURE

As a condition for admissibility of a defendant's impeaching conviction, the State must satisfy the 10-year prerequisite under Neb. Evid. R. 609(2). However, a problem exists as soon as a prosecutor asks: "Have you, defendant, been convicted of a felony during the last 10 years?" If the defendant responds "no," a jury might wonder whether the defendant was convicted more than 10 years ago. Such speculation by a jury is unnecessary and undesirable. A similar problem is created when a prosecutor inquires: "During the last 10 years, have you been convicted of a crime involving dishonesty or false statement?" What is a crime involving "dishonesty or false statement"? The determination whether a crime involves "dishonesty or false statement" depends on the law of the jurisdiction in which the defendant was convicted. What if the

defendant has been convicted in a jurisdiction other than Nebraska? Requiring a defendant to correctly classify a crime in the context of Neb. Evid. R. 609 necessarily demands a defendant's accurate knowledge of criminal law pertaining to the defendant's conviction, including knowledge of statutory definitions and judicial opinions construing criminal statutes. Also, regarding impeachment, there is the inadmissibility of a conviction which is the subject of a pardon, see Neb. Evid. R. 609(3), or a conviction from which an appeal is pending, see Neb. Evid. R. 609(5). Apart from evidential aspects of Neb. Evid. R. 609, consideration must be given to professional ethics for lawyers as prosecutors. See *State v. Borchardt*, 224 Neb. 47, 57, 395 N.W.2d 551, 558 (1986): " 'In appearing in his professional capacity before a tribunal, a lawyer shall not: (1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.' " (Quoting from Canon 7, DR 7-106(C)(1) of the Code of Professional Responsibility.)

Generally the question of which convictions will be usable to attack credibility should be determined prior to trial. Counsel need to know what the ruling will be on this important matter so that they can make appropriate tactical decisions. For example, the opening of defense counsel or the decision of the defendant to take the stand may be affected.

3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[05] at 609-95 to 609-96 (1988).

As expressly required by Neb. Evid. R. 104(3) (Neb. Rev. Stat. § 27-104(3) (Reissue 1985)), a hearing on preliminary matters concerning admissibility of evidence shall be conducted when the interests of justice require, or when a defendant is a witness, if the defendant so requests. Regarding a prosecutor's contemplated use of a known conviction to impeach the defendant, it is preferable that the hearing pursuant to Neb. Evid. R. 104(3) occur before trial at the request of the State or the defendant and provide the court with pretrial information regarding prospective evidence of the defendant's prior conviction. As a source of information quite likely to be prejudicial to a defendant and a source of inadmissible

evidence, the hearing pursuant to Neb. Evid. R. 104 to determine admissibility of a defendant's prior conviction, sought to be used for impeachment in accordance with Neb. Evid. R. 609, is conducted on the record but outside the jury's presence. Thus, whether a defendant's prior conviction is admissible for the defendant's impeachment pursuant to Neb. Evid. R. 609 is a preliminary question of admissibility to be determined in accordance with Neb. Evid. R. 104(3).

If there is no constitutional impediment to using a defendant's prior conviction for impeachment, see *Loper v. Beto*, 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972), the trial court, as a result of the suggested hearing under Neb. Evid. R. 104, will be able to ascertain the admissibility of a defendant's prior conviction for impeachment in accordance with Neb. Evid. R. 609. If the court determines that the defendant's conviction is inadmissible under Neb. Evid. R. 609, the State, in the jury's presence, is not permitted to initiate interrogation directed at the defendant's conviction or offer any public record of the defendant's conviction. However, if the court determines that Neb. Evid. R. 609 allows admitting evidence of the defendant's conviction for impeachment, the prosecutor, in the jury's presence, may then inquire whether the defendant has been convicted of a crime particularized in Neb. Evid. R. 609(1), but shall not name or identify the crime in the defendant's conviction and shall not inquire into details surrounding the crime underlying the conviction used for impeachment. The prosecutor may also inquire into the number of times a defendant has been convicted during the last 10 years, provided the convictions have been determined to be admissible under Neb. Evid. R. 609. A defendant's denial of a prior conviction, which the court has determined to be ⋅ admissible under Neb. Evid. R. 609, may result in the State's introduction of the appropriate public record of the defendant's prior conviction. See, *State v. Caradori*, 199 Neb. 691, 260 N.W.2d 617 (1977); *Latham v. State*, 152 Neb. 113, 40 N.W.2d 522 (1949).

The foregoing procedure for criminal cases should foster recognition of the boundaries for admissibility of a prior conviction to impeach a defendant pursuant to Neb. Evid. R.

609, reduce the opportunity for misuse of a conviction to impeach a defendant, and enable a defendant to make a better informed decision whether to take the stand in the face of potentially impeaching evidence in the form of a prior conviction. Adherence to the suggested procedure is not a prerequisite to admissibility of evidence authorized by Neb. Evid. R. 609. Rather, the suggested procedure appears to be a practicable measure which may be an ounce of prevention at the trial level, obviating a pound of appellate cure and a ton of mistrials and retrials on account of improper impeachment from contravention of Neb. Evid. R. 609.

Because cross-examination of Olsan went beyond the scope of inquiry allowed under Neb. Evid. R. 609, the district court's admitting evidence concerning the number of Olsan's escape convictions prejudiced Olsan's right to a fair trial and, consequently, constituted reversible error, not harmless error. We must, therefore, reverse the convictions of Olsan and remand this matter for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.