evidence obtained as a result of the checkpoint as the fruit of an illegal search and seizure.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order which affirmed the county court's judgment of conviction and sentence.

AFFIRMED.

———————————

State of Nebraska, appellee, v. Jesus R. Castillo-Zamora, appellant.

___ N.W.2d ___

Filed October 31, 2014.    No. S-14-020.

1.  **Rules of Evidence.** In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the rules, not judicial discretion, except in those instances when judicial discretion is a factor involved in the admissibility of evidence.
2.  **Rules of Evidence: Appeal and Error.** When judicial discretion is not a factor, whether the underlying facts satisfy the legal rules governing the admissibility of such evidence is a question of law, subject to de novo review.
3.  **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
4.  **Motions for Mistrial: Appeal and Error.** Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.
5.  **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.
6.  **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance on direct appeal, an appellate court is deciding only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?
7.  **Effectiveness of Counsel: Constitutional Law: Statutes: Appeal and Error.** If the alleged ineffective assistance claim rests solely on the interpretation of a statute or constitutional requirement, which claims present pure questions of law, an appellate court can decide the issue on direct appeal.

8. **Effectiveness of Counsel: Appeal and Error.** Whether the defense counsel's performance was deficient and whether the petitioner was prejudiced by that performance are questions of law that are reviewed independently of the lower court's decision.

9. **Rules of Evidence: Witnesses: Prior Convictions.** When impeaching a witness pursuant to Neb. Rev. Stat. § 27-609(1) (Reissue 2008), after the conviction is established, the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof.

10. **Courts: Motions for Mistrial: Appeal and Error.** Courts have considerable discretion in passing on the motions for mistrial, to the end that justice be more nearly effectuated. The trial court's decision will not be disturbed unless the trial court abused that discretion.

11. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

12. **Motions for Mistrial: Proof.** A defendant seeking mistrial must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

13. **Motions for Mistrial.** A party is barred from moving for a mistrial because of a prejudicial error when the party was responsible for creating the error.

14. **Rules of Evidence: Hearsay: Proof.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

15. **Rules of Evidence: Hearsay.** Hearsay is not admissible unless otherwise provided for under the Nebraska Evidence Rules or elsewhere.

Appeal from the District Court for Hall County: James D. Livinsgton, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## NATURE OF CASE

Jesus R. Castillo-Zamora appeals his conviction for first degree sexual assault. Castillo-Zamora alleges that the district court for Hall County, Nebraska, erred in two different

evidentiary rulings; that the district court abused its discretion in denying a joint motion for mistrial; and that he received ineffective assistance of counsel. We conclude that the district court did not err in its evidentiary rulings and did not abuse its discretion in denying the motion for mistrial. Because the record is incomplete, we decline to reach the ineffective assistance of counsel claims on direct appeal.

## BACKGROUND

This case centers around two separate incidents involving Castillo-Zamora and his sister-in-law, A.O. At the time of trial, A.O. was a 21-year-old college student at the University of Nebraska-Lincoln. A.O. has five brothers and two sisters, including Jacqueline Castillo, who is married to Castillo-Zamora. The extended family would often celebrate holidays and birthdays together. The first relevant incident occurred during a Christmas party at the Castillo-Zamora residence in Grand Island, Nebraska, on December 24, 2011. The second incident, when the alleged sexual assault took place, occurred during the early morning hours of March 25, 2012, at a party at the Castillo-Zamora residence to celebrate Jacqueline's birthday.

A.O. and Castillo-Zamora were both present at the December 24, 2011, party, along with Jacqueline; two of her brothers, Erick O. and William O.; and William's fiance, Chanda Schroyer. A.O. was on winter break from the university. A.O. testified to drinking two to three mixed drinks containing tequila over the course of the night, but said she did not feel intoxicated. Castillo-Zamora was also drinking alcohol that night. A.O. testified that late in the evening, she got up from the party to use the bathroom. Because a hallway bathroom was in use by Schroyer, A.O. went down the hallway to use the bathroom located in the Castillo-Zamora master bedroom. As A.O. was leaving the bedroom, she testified, she was pulled back into the bedroom by Castillo-Zamora. According to A.O., Castillo-Zamora asked her if she "found him attractive and if [she] was into him." She told him no and explained that "it was wrong for him to even approach [her] because he was with [her] sister."

A.O. then saw Schroyer exiting the hallway bathroom and pushed her back into the bathroom. Both A.O. and Schroyer testified that A.O. explained to Schroyer what Castillo-Zamora had said to her and how she responded. A.O. was visibly upset and crying. Both A.O. and Schroyer also testified that Castillo-Zamora knocked on the door of the bathroom, asked what was going on, and stated that he wanted to talk to A.O. again. Castillo-Zamora then grabbed A.O.'s arm and tried to pull her out of the bathroom, while Schroyer held onto A.O.'s other arm. Shortly after, the party ended and A.O. left the Castillo-Zamora home. Besides Schroyer, A.O. did not immediately tell anyone about this incident.

The families had another party at the Castillo-Zamora residence on March 24, 2012, that lasted into the early hours of March 25. This party was to celebrate Jacqueline's birthday. Several members of the family were present, including Castillo-Zamora; Jacqueline; A.O.; Erick; William; Schroyer; the siblings' mother; the siblings' uncle; and Castillo-Zarmora's cousin, Rodrigo Bolanos. A.O. and Castillo-Zamora were both drinking alcohol that night. Jacqueline was drinking alcohol as well.

Erick testified that around 11 p.m., he helped Jacqueline to her bedroom. Shortly after, A.O. decided that she would spend the night at the Castillo-Zamora home and went to the basement to lie on a couch. Erick also testified that after he left the party with his mother and uncle at 1 or 2 a.m., the only people left at the home were Castillo-Zamora, Jacqueline, their children, and A.O.

A.O. testified that while it was still dark out, she was awakened by Castillo-Zamora as he was carrying her to the laundry room in the basement. Once in the laundry room, Castillo-Zamora put A.O. down and again asked if she was attracted to him. He told her that "girls [her] age would kill to be with someone like me." A.O. told him that would only be the case "if they [the girls] weren't very bright and desperate." He then left to go upstairs. A.O. estimated that the incident occurred at approximately 2 a.m. and lasted for about 2 minutes. A.O. went back to the couch and stayed awake for approximately 30 minutes to see whether Castillo-Zamora returned.

Later in the night, A.O. testified, she was again awakened by Castillo-Zamora. This time, A.O. estimated it was around 5 or 6 a.m., because it was light outside. A.O. testified that she felt Castillo-Zamora's left hand down the back of her jeans. When she struggled, he used his right arm to pin her down. A.O. grabbed his wrist and told him to stop. Castillo-Zamora then reached around and unbuttoned A.O.'s pants and again put his hand down the backside of A.O.'s jeans, beneath her underwear. He then inserted his finger into A.O.'s vagina three or four times, while A.O. told him to stop. A.O. estimated that this lasted for about a minute, until Castillo-Zamora stopped without saying anything and went back upstairs. A.O. then stayed awake for approximately 2 hours waiting for her sister, Jacqueline, to get up so she could get a ride back to their mother's house.

Initially, A.O. did not tell anyone about the incident. After the spring semester was over in May 2012, A.O. went to visit her other sister in California. A.O. told that sister about what had happened with Castillo-Zamora during the early hours of March 25. A.O.'s sister convinced A.O. to go to the police about the incident. Upon returning to Nebraska in July, A.O. filed a report with the Grand Island Police Department. Castillo-Zamora was arraigned on February 13, 2013, for a single count of first degree sexual assault.

The jury found Castillo-Zamora guilty of first degree sexual assault. On December 11, 2013, Castillo-Zamora was sentenced to 3 to 5 years' imprisonment.

Castillo-Zamora appeals his conviction.

## ASSIGNMENTS OF ERROR

Castillo-Zamora assigns as error that the district court erred in (1) failing to allow Castillo-Zamora to inquire on redirect examination into the nature of his own witness' felony conviction after he was impeached by the State, (2) not granting a mistrial when both parties joined in the motion for mistrial, and (3) admitting hearsay statements. In addition, Castillo-Zamora assigns that he received ineffective assistance of counsel when his trial counsel failed to (1) object at trial to the introduction of evidence under Neb. Rev. Stat.

§ 27-404 (Cum. Supp. 2012), (2) properly object to testimony that constituted impermissible bolstering of a witness' credibility, (3) introduce two pieces of evidence during trial, and (4) object to prosecutorial misconduct during the State's closing argument.

## STANDARD OF REVIEW

[1-3] In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the rules, not judicial discretion, except in those instances when judicial discretion is a factor involved in the admissibility of evidence.[1] When judicial discretion is not a factor, whether the underlying facts satisfy the legal rules governing the admissibility of such evidence is a question of law, subject to de novo review.[2] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.[3]

[4] Whether to grant a mistrial is within the trial court's discretion, and we will not disturb its ruling unless the court abused its discretion.[4]

[5] Apart from rulings under the residual hearsay exception, an appellate court will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.[5]

[6-8] In reviewing claims of ineffective assistance on direct appeal, we are deciding only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?[6]

---

[1]  *State v. McManus*, 257 Neb. 1, 594 N.W.2d 623 (1999).

[2]  *State v. Parker*, 276 Neb. 661, 757 N.W.2d 7 (2008).

[3]  *State v. Smith*, 286 Neb. 77, 834 N.W.2d 799 (2013).

[4]  *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

[5]  *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012).

[6]  *State v. Dubray, ante* p. 208, ___ N.W.2d ___ (2014).

If the alleged ineffective assistance claim rests solely on the interpretation of a statute or constitutional requirement, which claims present pure questions of law, we can decide the issue on direct appeal.[7] Whether the defense counsel's performance was deficient and whether the petitioner was prejudiced by that performance are questions of law that are reviewed independently of the lower court's decision.[8]

## ANALYSIS

*Scope of Neb. Rev. Stat. § 27-609(1)*
*(Reissue 2008).*

In his first assignment of error, Castillo-Zamora assigns that the district court erred in failing to allow him to inquire on redirect examination into the nature of his own witness' felony conviction after the witness was impeached by the State.

During trial, the State properly impeached Castillo-Zamora's witness, Bolanos, by asking whether he had previously been convicted of a felony or crime of dishonesty. On redirect examination, trial counsel for Castillo-Zamora asked Bolanos if he had "been convicted of a felony," to which the State objected. The trial court sustained the objection on the ground that the statute does not draw a distinction between felonies and crimes involving dishonesty and, therefore, does not permit counsel to question whether a witness was convicted of a felony or crime involving dishonesty.

[9] Section 27-609(1) provides for the impeachment of a witness on cross-examination when the witness has committed a felony or crime of dishonesty. After the conviction is established, "the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof."[9] This rule has also been applied to the impeachment of nonparty witnesses.[10]

---

[7] See *id.*

[8] See *id.*

[9] *State v. Johnson*, 226 Neb. 618, 621, 413 N.W.2d 897, 898 (1987).

[10] *State v. Garza*, 236 Neb. 215, 459 N.W.2d 747 (1990).

This court has not previously considered how this rule applies on redirect examination.

The inquiry is restricted, because a witness' conviction of a crime is meant to be used for whatever effect it has on only the credibility of the witness, and it is not meant to otherwise impact the jury's view of the character of the witness.[11] Nebraska is among a small number of jurisdictions that has adopted this view.[12] The vast majority of jurisdictions allow inquiry into the nature of the underlying conviction.[13] But a long history of case law in Nebraska strictly construing § 27-609 establishes that the nature of the underlying conviction does not matter for impeachment purposes. We see no reason to reconsider our prior § 27-609 jurisprudence and no reason why the rule should not be extended to redirect examination as well.

Once the State had established Bolanos' conviction on cross-examination, the inquiry should have ceased. It was improper for Castillo-Zamora's counsel to ask on redirect examination whether Bolanos had "been convicted of a felony" after the witness had been impeached on cross-examination. As such, the trial court did not err when it sustained the State's objection to the further questioning on redirect examination of Bolanos on the nature of his earlier convictions.

Castillo-Zamora's first assignment of error is without merit.

*Joint Motion for Mistrial.*

In his second assignment of error, Castillo-Zamora argues that the district court erred when it denied the parties' joint motion for mistrial. This assignment of error also involves § 27-609(1).

The State moved for a mistrial after the following exchange took place between Castillo-Zamora's trial counsel and a witness for the State. On cross-examination, Castillo-Zamora attempted to impeach Schroyer:

---

[11] *Latham v. State*, 152 Neb. 113, 40 N.W.2d 522 (1949).

[12] *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989).

[13] *Id*.

[Castillo-Zamora's counsel:] While you were in Lincoln, were you ever convicted of a crime of dishonesty?

[Schroyer:] Yes.

Q That was for forgery, wasn't it?

A Yes.

[The State]: Objection.

THE COURT: Basis?

[The State]: I will withdraw my objection at this point.

THE COURT: Go ahead, please.

Q Then in the last ten years, you have been to Omaha, haven't you?

A Yes.

. . . .

Q During that time, you were convicted of a crime of dishonesty, weren't you?

A Yes.

Schroyer was then dismissed as a witness. Before calling the next witness, the State approached the bench and moved for a mistrial. The State argued that a mistrial was appropriate because counsel for Castillo-Zamora improperly impeached Schroyer by going into the details of her previous convictions. Castillo-Zamora's counsel stated that he did not have an objection to the mistrial and joined in the motion. The trial court denied the motion because the State failed to object when the question was asked and answered, but also noted that "[i]f objections were made, it very well would be that the Court would have sustained [the] objections . . . ."

[10] "Courts have considerable discretion in passing on the motions for mistrial, to the end that justice be more nearly effectuated."[14] The trial court's decision will not be disturbed unless the trial court abused that discretion.[15]

[11] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper

---

[14] *State v. Archbold*, 217 Neb. 345, 351, 350 N.W.2d 500, 504 (1984).

[15] See, e.g., *State v. Ramirez, supra* note 4.

admonition or instruction to the jury and thus prevents a fair trial.[16]

As discussed above, after a conviction is established, Nebraska law does not permit inquiry into the nature of the underlying crime.[17] Castillo-Zamora exceeded the proper scope of § 27-609. Assuming without deciding that this improper questioning could have given rise to a mistrial, the State withdrew its objection and had therefore waived it.[18] Because of the State's failure to timely object, the trial court correctly determined that the State could not move for a mistrial in this case.

[12,13] Because Castillo-Zamora merely joined in on the State's motion for mistrial, his claim also fails as a result of the State's failure to object. Castillo-Zamora also does not have any independent basis for a mistrial because he cannot demonstrate he suffered any prejudice. A defendant seeking mistrial must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[19] A party is barred from moving for a mistrial because of a prejudicial error when the party was responsible for creating the error.[20] Castillo-Zamora was wholly responsible for the improper questioning of the State's witness, and Castillo-Zamora cannot claim he was prejudiced by his own counsel's improperly exceeding the scope of § 27-609 while cross-examining the State's witness.

In this case, the trial court did not abuse its discretion in denying the joint motion for mistrial, because the State failed to object at the time the evidence was admitted, thereby waiving the error, and Castillo-Zamora only joined in the State's motion. Castillo-Zamora's second assignment of error is without merit.

---

[16] *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006).

[17] *State v. Johnson*, *supra* note 9.

[18] See *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002).

[19] *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

[20] See *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

*December 24, 2011, Hearsay Statements.*

In his third assignment of error, Castillo-Zamora assigns that the district court erred in admitting certain hearsay statements contained in Schroyer's testimony from the December 24, 2011, incident. Schroyer's testimony included statements A.O. made to Schroyer during the party on December 24 about how Castillo-Zamora asked A.O. in the bedroom whether A.O. was attracted to him and A.O.'s reaction to his comments. The court did not give a basis for overruling Castillo-Zamora's objection. Castillo-Zamora assigns that the trial court erred in admitting this testimony.

[14,15] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[21] Hearsay is not admissible unless otherwise provided for under the Nebraska Evidence Rules or elsewhere.[22] The statements clearly are hearsay.

The statements, however, can still be admissible if they fall under an exception to the general rule prohibiting hearsay. One such exception exists for excited utterances. For a statement to qualify as an excited utterance, the following criteria must be met: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event.[23] The justification for the excited utterance exception is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."[24]

Castillo-Zamora disputes that A.O.'s statements to Schroyer fall under the excited utterance exception for two reasons. First, Castillo-Zamora contends that the conversation in the bedroom did not constitute a startling event. Second, he argues that even if the conversation was a startling event, any

---

[21] Neb. Rev. Stat. § 27-801 (Reissue 2008).

[22] Neb. Rev. Stat. § 27-802 (Reissue 2008).

[23] Neb. Rev. Stat. § 27-803(1) (Reissue 2008). See, also, *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473 (2005).

[24] *State v. Pullens*, 281 Neb. 828, 840, 800 N.W.2d 202, 216-17 (2011).

shock from the event dissipated by the time A.O. had talked to Schroyer.

Castillo-Zamora contends that the excited utterance exception is not appropriate here, because the conversation between Castillo-Zamora and A.O. was not of significant magnitude to trigger the exception. The key inquiry does not necessarily concern the magnitude of the startling event, but whether an event caused the declarant to be under enough stress to speak without reflecting on the event, increasing the likelihood the statements were not fabricated.[25]

We have held that the visible reaction of the declarant can be enough to create an inference of a startling event. For example, a description that the declarant gave a "'teary-eyed and incoherent, raggedy, choked-up kind of explanation'" was sufficient to show a startling event.[26] An inference was also made when the declarant "appeared flushed, very fidgety, and visibly upset" at the time of the statement.[27] In the case at bar, both Schroyer and Erick testified to the fact that A.O. was crying and visibly upset while in the hallway bathroom. We conclude that Castillo-Zamora's unwanted sexual advances toward A.O. in a secluded area would be a startling event.

And the record further indicates that the statements were made while A.O. was still experiencing the effects of this startling event. To be excited utterances, statements need not be made contemporaneously with the exciting cause but may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated.[28] The true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act at issue.[29] The time between when the

---

[25] *State v. Hembertt, supra* note 23; *State v. Pullens, supra* note 24.

[26] *State v. Pullens, supra* note 24, 281 Neb. at 840, 800 N.W.2d at 216.

[27] *State v. Jacob*, 242 Neb. 176, 188, 494 N.W.2d 109, 118 (1993).

[28] *State v. Hembertt, supra* note 23.

[29] *State v. Pullens, supra* note 24.

event occurs and the statements are made is not "of itself dispositive of the spontaneity issue."[30] The length of time for the exception to apply depends on the facts of the case.[31]

Castillo-Zamora argues that the 30- to 40-foot walk from the bedroom to the hallway bathroom gave A.O. the necessary time to reflect and demonstrates a lack of spontaneity. The facts in the record would seem to suggest otherwise. Based on the record, only a short period of time could have passed between the time A.O.'s conversation with Castillo-Zamora ended and the conversation between A.O. and Schroyer began. Both Schroyer and Erick testified that A.O. was crying and visibly upset while in the hallway bathroom. While not necessary, a showing that the declarant is visibly excited is relevant to the third prong of the excited utterance test.[32]

The fact that A.O. was still visibly upset from the encounter would raise inferences that she was still under stress from the incident and that any statements made by her were spontaneous. We conclude that the statements made by A.O. to Schroyer were excited utterances as per § 27-803(1). The trial court did not err in admitting Schroyer's testimony. Castillo-Zamora's third assignment of error is without merit.

*Ineffective Assistance of Counsel.*

In his final assignment of error, Castillo-Zamora assigns, restated, that he received ineffective assistance of counsel because his trial counsel failed to (1) object at trial to the introduction of evidence under § 27-404, (2) properly object to testimony that constituted impermissible bolstering of a witness' credibility, (3) introduce two pieces of evidence during trial, and (4) object to alleged prosecutorial misconduct during the State's closing argument.

On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record, and the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be

---

[30] *State v. Boppre*, 243 Neb. 908, 927, 503 N.W.2d 526, 538 (1993).

[31] *Id.*

[32] *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990).

resolved.[33] The determining factor is whether the record is sufficient to adequately review the question.[34] An appellate court will not address an ineffective assistance of counsel claim on direct appeal if it requires an evidentiary hearing.[35]

We determine that the record on direct appeal is insufficient to review the first, third, and fourth claims made by Castillo-Zamora, and we decline to reach them. We determine that the record is sufficient to reach the second claim.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[36] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[37] An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order.[38]

To show prejudice under the prejudice component of the *Strickland* test, there must be a reasonable probability that but for the deficient performance, the result of the proceeding would have been different.[39] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[40]

Castillo-Zamora assigns that he received ineffective assistance of counsel when his trial counsel failed to properly object to testimony that allegedly impermissibly bolstered a witness' credibility. The State called Investigator Mark Wiegert, of the Grand Island Police Department, to testify. Wiegert was the primary investigator for the case. During the State's direct examination of Wiegert, Castillo-Zamora objected to a portion of his testimony in the following exchange:

---

[33] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[34] *Id*.

[35] *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

[36] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[37] *State v. Filholm, supra* note 33.

[38] *Id*.

[39] *State v. Robinson*, 285 Neb. 394, 827 N.W.2d 292 (2013).

[40] *Id*.

[The State:] Did you ask [Castillo-Zamora] if he felt like he got along with the rest of [A.O.'s] family?

[Wiegert:] Yes, I did.

Q And what did he tell you in response to that?

A Yes, he got along with all family members.

Q Did you ask him if he knew of any reason why [A.O.] might fabricate these allegations?

[Castillo-Zamora's counsel]: Objection.

THE COURT: Your basis, sir?

[Castillo-Zamora's counsel]: You Honor, I would think that's boasting.

THE COURT: Your objection is boasting?

[Castillo-Zamora's counsel]: Or boosting, whatever.

THE COURT: Boasting or boosting is your basis?

[Castillo-Zamora's counsel]: We will withdraw the objection.

The failure of Castillo-Zamora's trial counsel to properly object would preclude appeal on the matter.[41] The question then is whether the outcome would be any different had Castillo-Zamora's trial counsel properly objected. Neb. Rev. Stat. § 27-608(1) (Reissue 2008) provides that a party may offer supporting evidence of a witness' credibility so long as (1) the evidence is in the form of reputation or opinion, (2) it only relates to the witness' character for truthfulness, and (3) the witness' credibility has already been put at issue.

Section 27-608 does not apply to the type of evidence the State was trying to solicit from Wiegert. The focus of § 27-608 is not on witness credibility generally, but specifically pertains to regulating the use of evidence regarding the witness' character for truthfulness. Commentators have suggested a similar interpretation for the federal version of § 27-608, which is nearly identical to Nebraska's version of the rule.[42] The federal advisory committee made it clear that "the statutory limitations on the use of specific instances of conduct are intended to apply only with respect to character

---

[41] See *State v. Hall*, 270 Neb. 669, 708 N.W.2d 209 (2005).

[42] See 1 McCormick on Evidence § 47 (Kenneth S. Broun et al. eds., 7th ed. 2013).

for truthfulness, not with respect to other kinds of credibility attacks such as bias or motive to falsify."[43]

*State v. Beermann*[44] illustrates the type of testimony which would speak toward an accuser's "character for truthfulness." *Beermann* involved sexual assault charges. At trial, after the victim testified, the State called the sheriff's deputy who originally interviewed the victim to testify. The State asked whether the victim's prior testimony was consistent with what she had told the deputy, and the deputy responded in the affirmative. The deputy then testified that based on his experience and training, he believed the victim had been sexually abused. Because the deputy's testimony could be "construed as stating" that the victim's testimony was true, it was "totally improper for one witness to testify as to the credibility of another witness."[45]

In *State v. Archie*,[46] a witness stated that "she did not have 'any concerns that [the accuser] wasn't telling [her] the truth.'" Relying on *Beermann*, this court held that it was improper for the court to "inquire of a witness whether another person may or may not have been telling the truth in a certain instance."[47]

The Nebraska Court of Appeals overturned a conviction when one witness testified that it was "uncharacteristic" of the accuser to lie and another witness, a police officer, stated that the accuser was truthful and straightforward when he interviewed her.[48] The Court of Appeals concluded that the witnesses' testimony "in effect told the jury to believe [the accuser's] accusations."[49]

In this case, the State asked Wiegert whether he asked Castillo-Zamora "if he knew of any reason why [A.O.] might

---

[43] *Id.* at 306 n.2.

[44] *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989).

[45] *Id.* at 396, 436 N.W.2d at 509.

[46] *State v. Archie*, 273 Neb. 612, 634, 733 N.W.2d 513, 531 (2007).

[47] *Id.*

[48] *State v. Burkhardt*, No. A-05-335, 2005 WL 3470484 at *6 (Neb. App. Dec. 20, 2005) (not designated for permanent publication).

[49] *Id.*

fabricate these allegations." It was at this point that trial counsel attempted, but failed, to object to the question. After the objection was withdrawn, Wiegert testified that Castillo-Zamora "said he had no idea why [A.O.] would fabricate it because he got along with all of them, so he didn't have any idea why."

Assuming without deciding that Wiegert's testimony was inadmissible, he still could not establish that he was prejudiced from his trial counsel's failure to properly object. The erroneous admission of evidence is not reversible error if the evidence and other relevant evidence, properly admitted, supports the finding of the trier of fact.[50] The State asked similar questions to several other witnesses.

The State asked A.O. if, before the incident, she had had any "big arguments" or grudges against Castillo-Zamora, and she replied that she had not. Schroyer and Erick were both asked if they were aware, before the incident, of any big arguments or grudges between A.O. and either Castillo-Zamora or Jacqueline, and they both replied they were not. Jacqueline also testified that A.O. had a good relationship with both Castillo-Zamora and Jacqueline prior to the incident. From all the above testimony, the jury could properly infer that A.O. had no reason to fabricate the allegations due to any disagreement within the family. Even if Castillo-Zamora's trial counsel properly objected, it is not reasonably probable there would have been a different result.

Even if it was improper bolstering, Castillo-Zamora was not prejudiced, because almost identical questions were posed to other witnesses. Castillo-Zamora's assignment of error that he received ineffective assistance of counsel when his trial counsel failed to properly object to alleged impermissible bolstering of a witness' credibility is without merit.

### CONCLUSION

The judgment and sentence of the district court is affirmed.

Affirmed.

---

[50] *State v. Ramirez, supra* note 4.