STATE OF NEBRASKA, APPELLEE, V. MITCHELL WHITELEY, APPELLANT.
452 N.W.2d 290

Filed March 9, 1990.   No. 89-225.

Vincent M. Powers for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal by defendant, Mitchell Whiteley, from his jury convictions of burglary, under Neb. Rev. Stat. § 28-507(1) (Reissue 1989), and possession of burglary tools, under Neb. Rev. Stat. § 28-508(1) (Reissue 1989). After trial, defendant filed a pro se motion for a new trial. Among other allegations in the motion, defendant alleged that his counsel at trial provided ineffective assistance. At the hearing, defendant's counsel was allowed to withdraw, and the motion for a new trial was overruled. New counsel was appointed to represent defendant for sentencing and for any possible appeal. Defendant was subsequently sentenced to 20 months' to 5 years' imprisonment for the burglary, a Class III felony, and to 15 months' to 3 years' imprisonment for the possession of burglary tools, a Class IV felony. The sentences were ordered to run concurrently, and credit was given for 84 days served, plus all good time earned. Defendant timely appealed.

Defendant, through his appellate counsel, alleges that the trial court erred (1) in not granting defendant's motion for new trial, specifically in failing to find that the appellant received ineffective assistance of counsel; (2) in allowing the prosecutor to ask questions and the appellant to answer questions concerning the appellant's prior criminal record, in violation of Neb. Rev. Stat. §§ 27-609 and 27-404(1) (Reissue 1989); and (3) in imposing an excessive sentence. We affirm.

The record shows the following. On June 18, 1988, at 3:06 a.m., the Lincoln, Nebraska, manager of Cubs Distributing received a telephone call from Cubs' security company, which monitored the Cubs' warehouse at 3333 North 20th Street in Lincoln. The security company informed the manager that heat

and motion detectors in one zone in Cubs' warehouse had been triggered. A minute later, the manager received a second call from the security company, informing him that detectors had been triggered in another zone. He instructed the security personnel to call the police, and he drove to the warehouse, arriving at approximately 3:20 a.m. He was met there by police officers, who informed the manager that someone had been apprehended coming out of the warehouse.

Lincoln Police Officer John Donahue received a dispatch at 3:14 a.m. that a silent alarm had been triggered at Cubs' warehouse. He arrived at the warehouse 2 minutes later. He parked his cruiser southeast of the warehouse and approached a door on the east side of the warehouse. He peered through the window on the upper half of the door and saw a white male about 20 feet from the door. The officer identified this person, at trial, as the defendant. The evidence indicated that the warehouse lights were not on, but a soft drink machine light and a night-light illuminated the area inside the east door.

Officer Donahue testified that the defendant made eye contact with him and then ran, inside the warehouse, toward the northern end. Donahue pursued the defendant by running north along the outside east side of the warehouse. After running approximately 60 feet, Officer Donahue turned the northeast corner of the warehouse and observed the defendant's head, as defendant was crawling out of a hole in the north wall of the warehouse. Officer Donahue ran toward the defendant, drew his service revolver, grabbed the defendant's arm, and arrested him. This occurred just after defendant had completely emerged from the building through the hole.

The manager of Cubs testified that the hole was created in a previous burglary in December 1986, when unknown burglars had unbolted a metal panel, peeled it back, ripped through insulation, and then cut through an internal metal panel. The outer metal panel was repaired and rebolted, but the holes in the insulation and internal metal were not repaired. In reaction to the earlier burglary, Cubs installed the security system and no longer left large amounts of cash in the warehouse office file cabinets.

Officer Donahue escorted the defendant to his cruiser and

then patted him down. He discovered a screwdriver and Vise-Grips in the defendant's jacket pocket and another, larger screwdriver held against the defendant's body by the elastic around the waist of his jacket. In defendant's left front pants pocket the officer found $104 in cash and a lighter. Officer Todd Beam arrived as Officer Donahue was conducting this search.

Other officers, including a "canine unit," arrived at the warehouse to "set up a perimeter" and to search the warehouse for accomplices. None were found. When it was determined that the warehouse was secure, Officer Beam removed the defendant from the rear seat of the cruiser and conducted a more thorough, pocket by pocket, search of the defendant. Officer Beam found $8 in bills and $7.10 in coins in the defendant's right front pants pocket and also found a wallet and some keys.

Other officers, equipped with fingerprinting equipment and a camera, and the manager reentered the warehouse to collect evidence. Two file cabinets and a desk drawer were found open in the office area. All appeared damaged from being pried open, although there was testimony that one of the cabinets had been damaged during the December 1986 burglary.

The manager testified that the cabinets were locked before he left the warehouse the evening of June 17 and that $8 was missing from the bank bag which was kept in one of the file cabinets. No fingerprints were found. Officer Donahue testified that the defendant was wearing gloves when he handcuffed the defendant and identified the gloves worn by the defendant as those later found tucked under the back seat of Officer Beam's cruiser, where defendant had been placed. A "tire iron" and a flashlight were found outside, below the hole in the north wall of the warehouse. Officer Donahue testified that he saw the defendant drop the flashlight as he was being handcuffed. Several screws or bolts were also found on the ground outside of the hole.

Defendant's defense was outlined in the opening statement of defendant's trial counsel. Counsel told the jury that defendant anticipated that the police would testify that defendant was seen inside the burglarized building and arrested defendant as he was

coming out of the building. Counsel went on to say that defendant would deny everything the police said and would tell the jury about how the police harassed him and that the police had not been successful in convicting defendant, although they believed defendant had been involved in more than 100 burglaries. Counsel stated to the jury that the defense believed that the "police officers are going to come in here and deliberately, consciously lie."

Defendant maintained throughout the proceedings that the police were not telling the truth and that they framed him. He testified that on June 17, 1988, he received his paycheck in the amount of $229.80, went to the post office and mailed his wife $100, and then went to a bar at 27th and Holdrege Streets in Lincoln, where one of his friends worked as manager. Defendant testified that he had a couple of drinks and remained in the bar until 2 a.m., talking to his friend. He testified that he and his friend then went out to the parking lot of the bar and talked for about an hour about fixing up his friend's truck, which was in the parking lot. His friend corroborates the latter part of this testimony and testified that they each got into vehicles and left the parking lot at about 3 a.m.

Defendant testified that after leaving the parking lot he went to a convenience store to get a soft drink and that he then proceeded to an apartment building located immediately west of Cubs' warehouse because he had heard that there was going to be a party in apartment No. 2 of that building. The occupant of apartment No. 2 testified that she did not know defendant, that she was out of town on the weekend of June 17, 1988, and that as far as she knows there was no party in her apartment or in her apartment building during that weekend. Defendant testified that he was arrested by Officer Donahue as he was walking up to the apartment building.

As stated above, the theory of the defense was that defendant was framed because law enforcement personnel had become frustrated in their attempts to prosecute defendant legitimately. In the cross-examination of Officer Beam, the defense presented evidence in the form of a police interdepartment memorandum stating that defendant was a suspect in over a hundred burglaries, in several counties, and that in March 1987

a task force was created to investigate defendant and some of his associates. The investigation involved formal cooperation between the Nebraska State Patrol and the Lancaster County Sheriff's Department, and informal cooperation with the Lincoln Police Department.

We first discuss defendant's assignment of error concerning the trial court's failure to sustain his motion for a new trial based upon the alleged ineffectiveness of his counsel. In his pro se motion for a new trial, defendant alleged that the assistance of his attorney was ineffective for the following reasons:

1. He failed to appear at proceedings leading up to the Defendants [sic] trial.

2. Whenever the Defendant would file a Pro-se motion, [the defense attorney] would argue against the motion.

3. [The defense attorney] failed to call witnesses in behalf of the Defendant which could have resulted in a not guilty verdict.

4. Despite ordering him to do so, [the defense attorney] refused to call an expert witness to give expert testimony pursuant to Neb Rev Stat (Reissue 1985) 27-702. This being a professor of criminal justice who has specialized knowledge of facts relating to the case. His testimony would have resulted in a verdict of not guilty.

5. Despite The [sic] Defendant wanting [the defense attorney] to subpoena transcripts and tapes of police radio communications of the early morning hours of june [sic] 18th and the night of June 17th, 1988, [the defense attorney] failed to do so.

6. [The defense attorney] did prejudice himself against the Defendant at a meeting of the attorneys at the Bench. This occurring before the jury was brought in for voire [sic] dire process. When asked who would be conducting the trial, [the defense attorney] replied. "Idon't [sic] know who is going to handle it and I really don't care what happens to him in this case".

At the hearing on the motion for a new trial, defendant and his trial counsel were present. In view of the allegations in defendant's pro se motion, trial counsel requested and was allowed to withdraw. In the affidavit attached to the motion to

withdraw, defendant's trial counsel stated that he believed "the record will be inadequate for purposes of review by the trial court and . . . on appeal without the testimony of [defendant's counsel] being available . . . for purposes of the defendant's motion for new trial." The court asked defendant: "Do you want to take [the motion for new trial] up now . . . or do you want to wait until after you've gotten counsel appointed?" Defendant stated that he would take up the motion "now" and argued the motion personally. In so doing, defendant made general statements to the trial court indicating that his prior counsel did not care about the case and did not adequately investigate the case. Although his former defense counsel was present, defendant declined to call him as a witness.

To sustain a claim of ineffective assistance of counsel under the sixth amendment to the U.S. Constitution, "the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *State v. Hawthorne*, 230 Neb. 343, 347, 431 N.W.2d 630, 633 (1988). See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *State v. Uwanaka*, 230 Neb. 808, 809, 433 N.W.2d 540, 541 (1989), we added: "To sustain a claim of ineffective assistance of counsel, the defendant has the burden to present a record which shows counsel's deficient performance in representing the defendant."

Defendant has not demonstrated a deficiency in counsel's performance or prejudice from the conduct of counsel in this case. Defense counsel has " 'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *State v. Painter*, 229 Neb. 278, 281, 426 N.W.2d 513, 516 (1988) (quoting *Strickland, supra*). We have also stated: "The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel." *State v. Fries*, 224 Neb. 482, 485, 398 N.W.2d 702, 704 (1987). The defendant's conclusory allegations pertaining to counsel's failure to investigate and to call witnesses are insufficient to

demonstrate either deficiency or prejudice. The defendant has not made a single specific allegation as to any information available to his counsel which called for alternative conduct. For instance, there is no allegation as to the nature of any exculpatory evidence that would be presented by the witnesses not called by defense counsel or within the tapes of the radio dispatches desired by the defendant. Consequently, the defendant did not meet his burden to prove that his defense counsel's investigation was unreasonable or that failure to obtain or submit evidence prejudiced him.

The general allegations pertaining to the pro se motion are likewise insufficient. Defendant has not provided a record of any deficiency of counsel with regard to the pro se motion or prejudice caused by the alleged obstruction by defense counsel. The record supports the conclusion that all of defendant's nonfrivolous motions were granted.

As we stated in *State v. Tainter*, 218 Neb. 855, 857, 359 N.W.2d 795, 796-97 (1984),

> A motion for a new trial is addressed to the sound discretion of the trial court, and unless an abuse of discretion is shown, its determination will not be disturbed. [Citation omitted.] The asserted ground for a new trial must affect adversely the substantial rights of the defendant, and it must be shown that [the defendant] was prejudiced thereby. [Citation omitted.]

Defendant failed to demonstrate the ineffectiveness of his counsel, and we hold that the trial court did not abuse its discretion in overruling the motion for a new trial. The first assignment of error is without merit.

The second assignment of error refers to evidence elicited by the prosecution as to the nature of the defendant's past felony and misdemeanor convictions. The defendant cites *State v. Olsan*, 231 Neb. 214, 222, 436 N.W.2d 128, 134 (1989), where we stated that under Neb. Evid. R. 609, " '[w]hen a defendant testifies on his own behalf, the prosecuting attorney may question him as to his previous convictions for felony and the number thereof, but no details as to the nature of the charges or other details may be elicited or received.' " On direct examination, defendant, in response to a question whether he

had been convicted of any felonies in the past 10 years, stated that he had been convicted of two felonies, one in 1978 and one in 1979. On cross-examination the prosecution inquired into the nature of these convictions, and defendant answered that the first was for breaking and entering and the second was for burglary. There was no objection to the questions or the answers. As we stated in *Olsan, supra* at 223, 436 N.W.2d at 134-35, " '[i]f a party does not make a timely objection to evidence, the party waives the right on appeal to assert prejudicial error.' " See, also, *State v. Chapman, ante* p. 369, 451 N.W.2d 263 (1990). In *Olsan,* we found that sufficient objection was raised to the inquiry by the prosecution at trial, and that case is distinguishable. The defendant waived his right to assert this error on appeal by failing to object at trial. In the case before us, trial counsel's failure to object might have been consistent with the defense based on police suspicion of defendant, which, defendant alleged, caused the police to attempt to frame him. In this different case, defendant put into evidence the interdepartment memorandum containing his police record, which included the same information elicited by the prosecution. It cannot be said that the State could not inquire into that record.

Defendant then argues that the trial court had a duty to assert its own objection to the prosecution's inquiries beyond the existence and number of felony convictions, and erred in not doing so. There was no such duty on the part of the trial court. The second assignment of error is without merit.

In his third assignment of error, defendant contends that the trial court was vindictive in sentencing him and that his sentences are excessive. Defendant contends that the statement by the trial court at sentencing that "[defendant] approached this whole thing, the proceedings, as if he were smarter than his counsel . . . who is an extremely capable counsel and who did an excellent job for him throughout all of the proceedings, including the trial," speaks for itself as to vindictiveness. We agree. The statement is not evidence of vindictiveness.

With reference to defendant's claim that his sentences are excessive, we have stated that "a sentence within the limits prescribed by statute will not be set aside as excessive absent an

abuse of discretion on the part of the sentencing judge." *State v. Kitt*, 231 Neb. 52, 56, 434 N.W.2d 543, 546 (1989). Defendant's presence investigation report shows that he was placed on 5 years' probation in 1977 for burglary; was sent to prison for 1 year for burglary in 1978; and, in 1983, was again sent to prison for 1 year for theft by receiving. The sentences in this case are within prescribed statutory limits, and the trial court did not abuse its discretion in imposing the sentences. The third assignment of error is without merit. The district court's judgment is affirmed in all respects.

AFFIRMED.