STATE OF NEBRASKA, APPELLEE, V. LONNIE C. JONES, APPELLANT.

453 N.W. 2d 447

Filed April 6, 1990.    No. 88-908.

Lonnie C. Jones, pro se.

Robert M. Spire, Attorney General, and LeRoy W. Sievers; and, on brief, Neal P. Nelson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Lonnie C. Jones appeals two cases consolidated for trial wherein he was convicted by a jury of 21 violations of the Securities Act of Nebraska, Neb. Rev. Stat. §§ 8-1101 to 8-1124 (Reissue 1987). The defendant received sentences totaling 3 to 9 years' imprisonment. We affirm.

Jones was found guilty in the district court for Dawson County on three counts of offering or selling unregistered securities, in violation of § 8-1104; eight counts of aiding and abetting the sale of unregistered securities; two counts of transacting business as a broker-dealer, issuer, or agent while not registered as a broker-dealer, issuer, or agent, in violation of § 8-1103; and eight counts of offering a security by employment of a scheme to defraud or by making untrue statements or engaging in a course of business which operated as a fraud upon the purchaser, in violation of § 8-1102.

On appeal, the defendant claims that his convictions should be reversed because (1) the evidence was insufficient to support his convictions; (2) he was denied effective assistance of counsel; and (3) the trial court abused its discretion in imposing an excessive sentence.

Jones, having discharged his court-appointed counsel at the time of sentencing, appears in this court pro se. Failure of any court to appoint counsel for this appeal is not an assigned error in this proceeding.

We first consider Jones' contention that the evidence was insufficient to support his convictions.

On appeal, the Nebraska Supreme Court will reverse a verdict of guilty when the evidence is so lacking in probative force that the court can say as a matter of law that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt. *State v. Wyatt*, 234 Neb. 349, 451 N.W.2d 84 (1990).

In reviewing a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *Id.*; *State v. Boham*, 233 Neb. 679, 447 N.W.2d 485 (1989).

Taking the view most favorable to the State, the record reflects that Jones' convictions stem from the selling of "charter memberships" in his business, Cash Explosion Promotions, by the defendant and an employee, Lowell Rose. Cash Explosion was to be financed by the sale of 100 $1,500 "charter memberships" that entitled the membership owner to receive 16 percent interest on each $1,500 investment for 2 years. Additionally, the membership owner was to share equally in 25 percent of the net profits of the business. Each membership was evidenced by a written document given to the investor.

Investors testified that they understood they were not required to do anything other than make their initial investment in order to receive the 16-percent interest and the profit sharing. Two investors stated they bought "shares" of stock in Cash Explosion. There was no indication on the memberships that any affirmative acts were required of the purchasers.

Rose testified he worked for Jones and that he made representations to the investors under defendant's direction. Jones testified that he hired Rose and authorized Rose to make the representations on the membership agreements. Defendant personally, and through Rose, represented to the investors that their funds would be safe, that the investments were low risk, and that they were secured up to 125 percent by

income-producing properties, mortgages, and corporate bonds. One investor stated she did not believe she was taking a chance on losing her investment. At the time of trial, the investments had never been secured by any form of collateral. Jones admitted at trial that he had no collateral by way of property, first mortgages, or corporate bonds securing the charter memberships.

On February 13, 1986, Jones met with an attorney for the Nebraska Department of Banking and Finance regarding the Cash Explosion program. Defendant was told that his program constituted the offering of a security, that the security was required to be registered with the Department of Banking, and that he was required to be registered with the department to sell such a security. Jones was also told that any future offerings or sales should not occur until registration had been accomplished. The defendant was advised to seek legal counsel knowledgeable in securities law. Jones stated he saw an attorney and learned that registration would be costly. Defendant concluded that with internal bookkeeping changes, he could avoid registration. Jones continued to market the Cash Explosion program without registration. Although Jones represented that only 100 memberships would be sold, 121 were sold.

It is a well-established rule that on a question of law, the Supreme Court has an obligation to reach a conclusion independent of that reached by the trial court. *State v. Wren*, 234 Neb. 291, 450 N.W.2d 684 (1990).

In support of his claim that the evidence was insufficient to support his convictions, Jones argues only that his Cash Explosion venture activities did not amount to the selling or offering of securities because the "membership program" did not meet the definition of an "investment contract." Brief for appellant at 10. An investment contract is a security under § 8-1101(12). In interpreting the Securities Act of Nebraska, § 8-1122 encourages reference to federal law and the law of other states that have adopted the Uniform Securities Act. In *S. E. C. v. Howey Co.*, 328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946), the U.S. Supreme Court found that an investment contract is a security if it evidences (1) an investment (2) in a

common enterprise (3) with a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others. See, also, *Reves v. Ernst & Young,* _____ U.S. _____, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990).

In Jones' case, he offered to and did sell "non-merchant charter memberships" to purchasers for $1,500 each. The written membership agreements provided that the owner would receive interest at the rate of 16 percent per year for the first 2 years of the membership "PLUS: Equal share in 25% of net profit of Cash Explosion along with the retail charter members until the year 2000 A.D. First 100 charter members to share equally." Charter members were encouraged to purchase more than one membership. It is self-evident from the membership sale agreement that each member's $1,500 was an investment and that there was a common enterprise involving at least 100 people. In his first "Newsletter For Charter Members Of Cash Explosion Promotions" Jones said, "[W]e are dealing with a ONE HUNDRED MILLION DOLLAR a year business!!!" In his second newsletter, in which he referred to an advertising campaign, Jones declared, "All this means is that your Charter Memberships will convert to stock in the company. This will *not change your agreements,* you will still receive 16% interest the first two years (paid monthly) *PLUS you will still share in 25% of the net profits of the company . . . .*" (Emphasis supplied.) In subsequent newsletters, Jones spoke glowingly of prospects for a successful venture which would become nationwide. Under the terms of the contract and representations by Jones, a jury could find beyond a reasonable doubt that a purchaser bought a charter membership for $1,500 with the reasonable expectation of profits. There is substantial evidence from which it could be determined that the profits would be derived from the entrepreneurial or managerial efforts of others and that the investor need do nothing more than put up his or her money. The written investment contract did not require the purchaser to do anything more than invest funds.

In several counts of the informations involving unregistered securities, Jones is charged with willfully offering or selling an unregistered security, "to-wit: shares in Cash Explosion." The agreement uses the word "share" in describing a member's

portion of 25 percent of net profit of Cash Explosion by the first 100 charter members. "Share" means

> [a] part or definite portion of a thing owned by a number of persons in common and contemplates something owned in common by two or more persons and has reference to that part of the undivided interest which belongs to some one of them. A unit of stock representing ownership in a corporation.

Black's Law Dictionary 1233 (5th ed. 1979). See, also, Webster's Third New International Dictionary Unabridged (1981).

Throughout his testimony, Jones claimed that the sale of membership agreement only gives a member the option to purchase stock after 2 years. In view of the written agreement, not only is that contention untenable, but if his contention was correct, Jones' conduct would still violate Nebraska's securities act. Section 8-1101(12) defines a "security," in part, as "any note, stock . . . certificate of interest or participation in any profit-sharing agreement . . . investment contract . . . or, in general, any interest or instrument commonly known as a security . . . *or right to subscribe to or purchase . . . any of the foregoing.*" (Emphasis supplied.)

The security offered by the defendant does not fall within any of the securities exempt from registration in § 8-1110 or transactions exempt from registration under § 8-1111.

Under the foregoing facts, there was sufficient evidence for a jury to find beyond a reasonable doubt that the defendant was guilty of the crimes charged. There is no merit to Jones' contention that there was insufficient evidence for a jury to find beyond a reasonable doubt that a security was offered or sold in his Cash Explosion venture.

We next consider Jones' claim that he was denied effective assistance of counsel.

To sustain a claim of ineffective assistance of counsel as a violation of the sixth amendment to the U.S. Constitution or article I, § 11, of the Nebraska Constitution, and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that but for counsel's

deficient performance, the result of the proceeding would have been different. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). To sustain a claim of ineffective assistance of counsel, the defendant has the burden to present a record that shows counsel's deficient performance in representing the defendant. *State v. Whiteley*, 234 Neb. 693, 452 N.W.2d 290 (1990).

As noted in *State v. Hawthorne*, 230 Neb. 343, 347, 431 N.W.2d 630, 633 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)), and again in *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989): " '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance.' "

In contending that his trial counsel was ineffective, defendant first asserts that had trial counsel shown the court exhibit 9 and explained that "the [16-percent] interest [paid to members] was *not* designed to be paid by the Cash Explosion Venture," brief for appellant at 11, the jury would have concluded that the offering did not constitute an investment contract or security, as there would be no expectation of profit from a common enterprise. Exhibit 9 was a bulletin making numerous claims about Cash Explosion and contained information that was given to members as part of their investment.

Exhibit 9 was offered and received into evidence, and it merely states that income from various properties was being pledged to a trust account in sufficient amounts to guarantee 16 percent per annum simple interest for a period of 2 years. The exhibit does not indicate that interest would not be paid by the Cash Explosion venture. Jones fails to demonstrate how counsel's performance with regard to exhibit 9 prejudiced his defense. Nor does the defendant demonstrate how the results of the trial would have been different had his counsel performed as the defendant would have had him perform.

Jones also contends that trial counsel was ineffective in failing to obtain an affidavit from an attorney who purportedly gave defendant legal advice with regard to the Cash Explosion

venture. Jones contends that had such affidavit been procured, the jury would have realized that he did not purposely break the law. Proof of specific intent, evil motive, or knowledge that the law was being violated is not required to sustain a conviction under the Securities Act of Nebraska. *State v. Fries*, 214 Neb. 874, 337 N.W.2d 398 (1983). Moreover, even if such an affidavit had been obtained, it would be inadmissible at trial as hearsay. See, Neb. Rev. Stat. §§ 27-801(3) and 27-802 (Reissue 1989).

In his reply brief, defendant asserts that trial counsel should have subpoenaed the attorney he claims to have consulted, as well as other witnesses. Nothing in the evidence by way of affidavit or testimony from the attorney supports Jones' allegations as to what the attorney would have testified to had he been called as a witness. Likewise, what other witnesses would have testified to had they been called is not reflected in the record by affidavits or testimony. Assertions stated in a brief but not supported by the record do not support an ineffective assistance of counsel claim. See *State v. Whiteley, supra.* Furthermore, the decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffective assistance of counsel. *Id.* Jones' contention is meritless.

Defendant lists the following documents that he contends effective counsel would have introduced in his defense:

1) The Cash Explosion business records, which would have proven:

a. How much money Lowell Rose stole, besides the $7,000 which was known about, during the months of September and October, 1986. In other words, how much did he steal during the months of December 1985 through September 1986?

b. That Mr. Rose was an independent agent, not an employee.

2) An original letter, dated December 1986, from Mrs. Lowell Rose, addressed to the Defendant, where she apologized for Lowell Rosses [sic] dishonest actions, which caused the failure of Region One, even before it became a reality.

3) A letter from Charles Boren, a charter member, stating his belief that the Defendant was a man of honesty and integrity and would not intentionally be involved in any illegal activity.

4) A 1¼ hour long video tape, narrated by the Defendant, which carefully explained the Cash Explosion Venture and [h]ad been approved by the Prosecution.

Reply brief for appellant at 4.

The above documents with regard to Lowell Rose are irrelevant to the crimes charged. The defendant has failed to prove how he was prejudiced by his counsel's failure to offer such evidence at trial or that the result of the trial would have been different had the evidence been received. The letter from Boren was hearsay and not admissible. Defendant fails to show how his counsel's failure to offer a videotape in evidence prejudiced his defense or that the results of the trial would have been different had the tape been before the jury.

Jones also contends that his trial counsel should have emphasized that the wording used in the membership agreements was originated by Rose. This complaint is without merit. Jones testified he was aware of the language in the agreements and authorized Rose to make the representations contained in the agreements.

The defendant also claims that a plea in abatement filed by his counsel was "so deficient" that it did not enlighten the trial court that "security interests of the complaining parties had not attached and hence [the security laws] did not apply [and that] but for counsel's deficient performance the charges would have been quashed." Brief for appellant at 14. In arguing that the security interests had not attached, defendant directs this court to article 9 of the Nebraska Uniform Commercial Code, specifically, Neb. U.C.C. §§ 9-302 et seq. (Reissue 1980). Article 9 of the Uniform Commercial Code is not relevant in this case, notwithstanding defendant's assertion to the contrary. Jones' assignment of error that he was denied effective assistance of counsel is meritless.

The defendant contends that "[u]nder the facts in this case, (specifically the presentence investigation report) the District court abused its discretion, by imposing an excessive sentence

against the appellant." Brief for appellant at 3. The defendant does not discuss this assignment of error in either his initial brief, reply brief, "Oral Argumant [sic], Submitted In Writing," or "Written Rebuttal to Oral Argument." It is a well-established rule of this court that error assigned but not discussed will not be considered. *State v. Narcisse*, 231 Neb. 805, 438 N.W.2d 743 (1989); *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987); Neb. Ct. R. of Prac. 9D(1)d (rev. 1989).

AFFIRMED.