STATE OF NEBRASKA, APPELLEE, V.
JOHN PIEPER, APPELLANT.
743 N.W.2d 360

Filed January 4, 2008.    No. S-07-057.

Jessica L. Milburn for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

John Pieper was convicted in the district court for Lancaster County of first degree assault and false imprisonment in the first degree. Pieper appeals his convictions and his sentencing as a habitual criminal. We affirm.

## STATEMENT OF FACTS

The State charged Pieper with first degree assault, first degree sexual assault, and false imprisonment in the first degree. The State amended the information to charge Pieper as a habitual criminal. The charges arose out of incidents that occurred on July 11 and 12, 2004, and involved Pieper; a codefendant, Jeremiah Croghan; and the victims, Vernon French and A.N. Pieper, Croghan, French, and A.N. testified at trial and gave accounts of the incidents which varied in certain respects. There is no claim that the evidence is insufficient, and taking the evidence favorably to the State, we summarize the evidence as follows.

In July 2004, French was living with his girlfriend, A.N. They were in their apartment on the night of July 11, listening to music. Late that night, Croghan and Pieper came to the door of the apartment and told French and A.N. that they had heard the music and wanted to introduce themselves. Croghan had recently moved into an apartment down the hall.

Accounts vary regarding which persons drank whiskey or beer, took Xanax, or smoked marijuana that night. At some point in the evening, arguments ensued and French was beaten. French was hospitalized for 5 to 7 days with injuries from the assault. Pieper was convicted of the assault in this case. There was testimony that at one point, Pieper held a knife to A.N.'s throat and took her to Croghan's apartment. Pieper was convicted of false imprisonment with respect to A.N. There was also testimony that A.N. was sexually assaulted. Pieper was found not guilty of this charge.

A tape recording of an interview French gave to a police officer was entered into evidence during the officer's testimony, but no portion of the tape recording was played to the jury. A transcription of the tape recording of another police officer's interview with French was also entered into evidence during that police officer's testimony, but no part of the transcription was read to the jury. Pieper's counsel did not object to admission of the tape or the transcription.

A tape recording of an interview A.N. gave to a police officer was marked as an exhibit, but there is no indication in the record that the tape was offered or admitted into evidence. No portion of the tape recording was played to the jury.

Croghan testified at Pieper's trial in a manner which was generally unfavorable to Pieper. Included in that testimony was a description of Pieper's hitting French and threatening French with a knife. In his initial statements to police on July 14, 2004, Croghan's recounting of events was generally similar to his trial testimony. In contrast to the trial testimony, on May 2, 2005, Croghan gave a deposition which was more favorable to Pieper and painted a picture in which French had been an aggressor and Croghan had kicked French. Weeks before Pieper's trial, on February 22, 2006, the prosecutor in this case asked a police officer to contact Croghan to ask how he would testify at trial. Prior to the conversation, the officer thought that Croghan "was going to claim all responsibility of wrong doing [sic] in this case." However, Croghan told the officer that he had lied in his deposition because he was being threatened by Pieper's associates. Croghan told the officer that at trial, he planned to tell the truth, which more closely tracked his original statement to police in which Croghan stated that Pieper had assaulted French. The officer called the prosecutor on February 22 to orally report on the conversation, but the officer did not prepare a written report of the conversation until April 11, after Pieper's trial had begun. On April 12, the third day of Pieper's trial, and prior to Croghan's testimony, Pieper moved to dismiss based on prosecutorial misconduct because he had not been provided a copy of the officer's report of the February 22 conversation with Croghan until that day. The court overruled

the motion to dismiss. Pieper then made a motion for mistrial, which the court also overruled.

Pieper testified in his own defense. In his testimony, Pieper stated that French had been an aggressor and that it was Croghan who had hit French. Pieper denied that he ever punched, kicked, or stomped on French.

The jury returned a verdict on April 18, 2006, finding Pieper guilty of first degree assault and false imprisonment but not guilty of sexual assault. On April 21, Pieper filed a motion for new trial based on general allegations of irregularities and misconduct. On May 3, Pieper filed a pro se amended motion for new trial in which he made more specific allegations, including allegations of prosecutorial misconduct and ineffective assistance of counsel. Pieper also filed a pro se motion to dismiss counsel and appoint new counsel. The court sustained Pieper's motion for new counsel and appointed new counsel on May 12. On May 25, Pieper filed a third amended motion for new trial, asserting irregularities, misconduct, and ineffective assistance of counsel. Hearings were held, and on November 27, the court overruled the motion for new trial.

An enhancement hearing based on the habitual criminal allegation was held December 12, 2006. At the enhancement hearing, Pieper objected on the basis that "notwithstanding Nebraska Supreme Court precedent," enhancement pursuant to the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Cum. Supp. 2006), violated the Double Jeopardy Clauses of the Nebraska and federal Constitutions. The court overruled the objection and found Pieper to be a habitual criminal. The court sentenced Pieper to imprisonment for 10 to 20 years on each of the two convictions, with the sentences to be served consecutive to one another.

Pieper appeals.

## ASSIGNMENTS OF ERROR

Pieper asserts that the district court erred in (1) failing to grant his motion for new trial on the basis that the State failed to timely disclose to the defense Croghan's statement on February 22, 2006, that his testimony at trial would be consistent with his original statement to the police and contrary to his deposition,

(2) admitting tape recordings and transcriptions of the victims' statements into evidence without playing the tapes during trial and without restricting jury access to the tapes and transcriptions during deliberations, (3) failing to grant his motion for new trial on the basis that he received ineffective assistance of trial counsel, (4) failing to conclude that the habitual criminal statute violates the Double Jeopardy Clause, and (5) imposing excessive sentences.

## STANDARDS OF REVIEW

■ In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

■ Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Gozzola*, 273 Neb. 309, 729 N.W.2d 87 (2007).

■ The constitutionality of a statute is a question of law, regarding which the Nebraska Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Archie, supra.*

■ A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *Id.*

## ANALYSIS

*The District Court Did Not Err in Overruling Pieper's Motion for New Trial Because the Prosecution Did Not Have an Obligation to Disclose a Nonexculpatory Pretrial Conversation With a Witness.*

As his first assignment of error, Pieper asserts that the trial court erred when it overruled his motion for new trial in which he claimed that the State failed to timely disclose to the defense the officer's February 22, 2006, conversation with Croghan. We determine that the State had no obligation to disclose the conversation in this case and that therefore, the court did not abuse its discretion when it did not grant a new trial on such basis.

■ We note initially that under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), due process requires the State to disclose exculpatory evidence to a defendant. See *State v. Lykens*, 271 Neb. 240, 710 N.W.2d 844 (2006). However, the State is not under a constitutional duty to disclose all information that might affect the jury's verdict, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992), and discovery in a criminal case is, in the absence of a constitutional requirement, controlled by either a statute or a court rule, *id.* At issue here is Croghan's verbal statement to a police officer that he intended to testify in a manner unfavorable to Pieper. Such statement was not exculpatory to Pieper. Nevertheless, Pieper claims that the State had an obligation to disclose its knowledge regarding Croghan's intentions and that such obligation stemmed from discovery statutes and the court's discovery order. We determine that neither the statute nor the court's discovery order support Pieper's claim.

Pieper filed a motion for discovery on December 23, 2004. It did not specifically request the type of police witness inquiry at issue here. The court granted the motion in an order in which it stated, "Discovery is granted to all parties to [the] extent allowed by statute." Discovery statute Neb. Rev. Stat. § 29-1912 (Reissue 1995) controls our analysis. Section 29-1912 provides in part:

(1) When a defendant is charged with a felony or when a defendant is charged with a misdemeanor or a violation of a city or village ordinance for which imprisonment is a possible penalty, he or she may request the court where the case is to be tried, at any time after the filing of the indictment, information, or complaint to order the prosecuting attorney to permit the defendant to inspect and copy or photograph:

(a) The defendant's statement, if any. . . .

(b) The defendant's prior criminal record, if any;

(c) The defendant's recorded testimony before a grand jury;

(d) The names and addresses of witnesses on whose evidence the charge is based;

(e) The results and reports of physical or mental examinations, and of scientific tests, or experiments made in connection with the particular case, or copies thereof; and

(f) Documents, papers, books, accounts, letters, photographs, objects, or other tangible things of whatsoever kind or nature which could be used as evidence by the prosecuting authority.

Pieper does not claim that the February 22, 2006, interview of Croghan fits any particular category listed in § 29-1912, although he does suggest knowledge of it would have been "useful" to the defense. Brief for appellant at 36. He further suggests that the reference to "information within the possession, custody, or control of the state" found in another discovery statute, Neb. Rev. Stat. § 29-1914 (Reissue 1995), expands the listings found in § 29-1912 to include "information" in general. We reject this argument. By its terms, § 29-1914 limits rather than expands the scope of discovery orders issued under § 29-1912 to "items or information within the possession, custody, or control of the state." Section 29-1914 does not add a new category, to wit "information," subject to discovery but instead serves to circumscribe the discovery obligation of the State. Given the discovery request and the court's discovery order in this case, which granted discovery to the extent allowed by statute, the State was not obligated to disclose its conversation with a witness in preparation for trial.

Pieper moved for a new trial on the additional basis that the State's providing the report of the February 22, 2006, conversation on the third day of trial was untimely. We conclude that the court did not abuse its discretion in overruling the new trial motion on such basis. With respect to the timeliness of the production of the officer's report, we note that the written report was not prepared until the second day of trial and that the State provided the report to the defense the next day, prior to Croghan's testimony at trial. After receiving the report, Pieper moved to dismiss and for a mistrial. When the motions were overruled, Pieper did not move for a continuance.

It is apparent from the record that prior to trial, Pieper was aware that Croghan had given conflicting accounts of the events at issue and that one version was more favorable than the other.

Given this knowledge of disparate versions, the possibility that Croghan's trial testimony could be consistent with his original statement was apparent to defense counsel.

We determine that given the discovery request, the discovery order, the discovery statutes, and Pieper's knowledge that Croghan had already given conflicting versions of events, the State was not obligated to provide to the defense its understanding of the officer's February 22, 2006, conversation with Croghan. We therefore conclude that the court did not abuse its discretion by overruling Pieper's motion for new trial on this basis.

*Pieper Did Not Object to the Admission of Tape Recordings and Transcriptions of the Victims' Statements to Police and Did Not Preserve the Issue for Appeal.*

As his second assignment of error, Pieper asserts that the court erred in admitting tape recordings and transcriptions of tape recordings of police interviews with the victims, French and A.N. We conclude that because Pieper failed to object to admission of these items, he has failed to preserve this issue for appeal.

A tape recording of a police interview with French and the transcription of a tape recording of another police interview with French were admitted into evidence. The tape recording was not played to the jury, and the transcription was not read to the jury. Although there is no indication in the record that the jury listened to the tape recording or read the transcription during deliberations, it appears that both pieces of evidence were available to the jury. For completeness, we note that in his appellate argument, Pieper also references a tape recording of a police interview of A.N. that was marked as an exhibit; however, there is no indication in the record that the A.N. tape recording was offered or admitted into evidence.

A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003). When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an

issue never presented and submitted to it for disposition. *State v. Dockery*, 273 Neb. 330, 729 N.W.2d 320 (2007). Pieper did not object to the admission of the tape recording and the transcription and did not present the issue to the trial court. We therefore reject Pieper's second assignment of error.

*Claims of Ineffective Assistance of Counsel May*
*Not Be Raised in a Motion for New Trial.*

As his third assignment of error, Pieper asserts that the court erred in overruling his motion for new trial in which, through substitute counsel, Pieper claimed his initial trial counsel had provided ineffective assistance. The State argues that ineffective assistance of counsel is not a proper statutory ground for a motion for new trial. We agree with the State and conclude that the court did not err in overruling the motion for new trial on such basis.

The statute governing motions for new trial, Neb. Rev. Stat. § 29-2101 (Cum. Supp. 2006), provides as follows:

A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: (1) Irregularity in the proceedings of the court, of the prosecuting attorney, or of the witnesses for the state or in any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial; (2) misconduct of the jury, of the prosecuting attorney, or of the witnesses for the state; (3) accident or surprise which ordinary prudence could not have guarded against; (4) the verdict is not sustained by sufficient evidence or is contrary to law; (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial; (6) newly discovered exculpatory DNA or similar forensic testing evidence obtained under the DNA Testing Act; or (7) error of law occurring at the trial.

We note that ineffective assistance of counsel is not one of the enumerated grounds upon which a defendant may move for a new trial under § 29-2101.

■ Pieper argues on appeal that the procedure of raising claims of ineffective assistance of counsel in a motion for new trial was "allowed" by this court in earlier cases and should be permitted in the instant case. Reply brief for appellant at 3. Pieper cites *Hawk v. Olson*, 146 Neb. 875, 22 N.W.2d 136 (1946), and *State v. Whiteley*, 234 Neb. 693, 452 N.W.2d 290 (1990). In *Hawk*, this court held that due process issues, including a claim that the defendant had been deprived of effective assistance of counsel, were "issues which are not justiciable in a habeas corpus proceeding in this state." 146 Neb. at 881, 22 N.W.2d at 140. In reaching such conclusion, this court stated in dicta that the issues "could have been presented and determined by the trial court, in the first instance, on a motion for a new trial." *Id.* In *Whiteley*, this court held that the trial court did not abuse its discretion in overruling a motion for new trial which raised issues of ineffective assistance of counsel. However, this court did not, in either *Hawk* or *Whiteley*, cite to § 29-2101 or analyze the propriety or prudence of raising a claim of ineffective assistance in a motion for new trial made under § 29-2101. Because we conclude that ineffective assistance of counsel is not a ground upon which a defendant may move for new trial under § 29-2101, to the extent that *Hawk* and *Whiteley* imply that an ineffective counsel claim can be raised on a motion for new trial, they are disapproved.

We believe that in addition to the fact that a claim of ineffective counsel is not an enumerated basis for a new trial motion under § 29-2101, such claim is not suited to a motion for new trial. Due to the absence of a record relating to issues such as defense counsel's trial strategy, a separate evidentiary hearing would be required on the ineffectiveness claim, thus postponing entry of judgment. A defendant exploring ineffectiveness of trial counsel immediately after the trial could run the risk of a procedural bar if not all ineffectiveness claims were raised and developed. Defendants are not without remedies. Claims of ineffective assistance of counsel are available on direct appeal and in postconviction proceedings. See, *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007); Neb. Rev. Stat. § 29-3001 (Reissue 1995). However, they are neither authorized nor suited to the immediate aftermath of a trial in a motion for new trial.

Because ineffective assistance of counsel is not a proper ground for a motion for new trial under § 29-2101, we conclude that the court did not abuse its discretion by overruling the motion for new trial on such basis.

*Nebraska's Habitual Criminal Statute Does Not*
*Violate the Double Jeopardy Clause.*

As his fourth assignment of error, Pieper asserts that the court erred in rejecting his assertion that the habitual criminal statute, § 29-2221, violates the Double Jeopardy Clauses of the federal and Nebraska Constitutions. We conclude that the court did not err in rejecting such assertion.

■ In raising the constitutional challenge to the habitual criminal statute at the enhancement hearing, Pieper's counsel acknowledged that the challenge was made "notwithstanding Nebraska Supreme Court precedent stating double jeopardy principles do not apply." This court has previously rejected double jeopardy challenges to Nebraska's habitual criminal statute and has long held that the statute does not violate the Double Jeopardy Clause because "an enhanced sentence under the provisions of the habitual criminal laws is not a new jeopardy or additional penalty for the same crime. It is simply a stiffened penalty for the latest crime which is considered to be an aggravated offense because it is a repetitive one." *Addison v. Parratt*, 208 Neb. 459, 462, 303 N.W.2d 785, 787 (1981). See, also, *State v. Goodloe*, 197 Neb. 632, 250 N.W.2d 606 (1977), *disapproved on other grounds, State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979).

Pieper makes no new argument that would cause us to reconsider such precedent. The district court therefore did not err in rejecting Pieper's constitutional challenge to the habitual criminal statute.

*District Court Did Not Impose Excessive Sentences.*

As his final assignment of error, Pieper asserts that the court imposed excessive sentences. The sentences were within statutory limits, and we conclude that the court did not abuse its discretion in the sentences it imposed.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). Pieper was convicted of first degree assault under Neb. Rev. Stat. § 28-308 (Reissue 1995) and false imprisonment in the first degree under Neb. Rev. Stat. § 28-314 (Cum. Supp. 2006). First degree assault is a Class III felony, § 28-308(2), and false imprisonment is a Class IIIA felony, § 28-314(2). The maximum sentence of imprisonment is 20 years for a Class III felony and 5 years for a Class IIIA felony. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2006). However, due to prior felony convictions, Pieper was found to be a habitual criminal, and under § 29-2221, one found to be a habitual criminal is to be punished by imprisonment for a mandatory minimum term of 10 years and a maximum term of not more than 60 years for each felony conviction. Pieper was sentenced to imprisonment for 10 to 20 years on each count with the sentences to be served consecutive to one another. Therefore, Pieper's sentences were within statutory limits.

Pieper's main argument is that the court erroneously ordered that his sentences be served consecutive to one another because the court mistakenly thought it was required to do so. Pieper notes that when defense counsel urged that the sentences be ordered to be served concurrently, the court stated, "while some might think that I have a lot of discretion in this matter, I really don't think I do." We do not read the court's comments to indicate that the court thought it was mandatory that the sentences be served consecutive to one another. The court continued by stating, "while it would be tempting to make the sentences concurrent, because they do arise perhaps out of the same event, what I have are two separate victims and really two very separate crimes, at least as the jury determined them." The court then "decline[d] that invitation" to order the sentences to be served concurrently. We read the court's comments to indicate that the court knew it had discretion to order the sentences to be served concurrently but decided that consecutive sentences were appropriate under the circumstances.

Although Pieper argues that he did not have a history of violence, we note that Pieper had a significant criminal history, including felony convictions for burglary and theft. We also

note that the victims in this case suffered severe physical and emotional injuries as a result of the crimes and that French's injuries in particular were life threatening. We finally note that the sentences were at the lower end of the range mandated by the habitual criminal statute. We therefore conclude that the court did not abuse its discretion in imposing consecutive sentences of 10 to 20 years' imprisonment on each count.

## CONCLUSION

Having considered and rejected each of Pieper's assignments of error, we affirm his convictions and sentences for first degree assault and false imprisonment in the first degree.

AFFIRMED.