IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HARDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DWAN D. HARDEN, APPELLANT.

Filed May 17, 2016.    No. A-15-536.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Douglas A. Johnson for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Dwan D. Harden appeals his conviction in the Douglas County District Court of first degree sexual assault. He argues that the court allowed an improper expert opinion into evidence at trial and that the evidence is insufficient to sustain the conviction. Finding no merit to these arguments, we affirm.

## BACKGROUND

On May 9, 2014, Harden and the victim in this case, M.P., began communicating on a social media website. After going out drinking with her friends that night, M.P. returned home around midnight and noticed that Harden was online. They agreed to get together to smoke marijuana, and Harden picked M.P. up at her residence in a sport utility vehicle (SUV). They drove to a gas station, and afterwards, instead of taking M.P. home like she requested, Harden turned

- 1 -

into a different neighborhood and parked the SUV. He asked M.P. if he could perform oral sex on her, and M.P. said no. He asked her again, and she called him "pathetic and desperate" and continued to beg him to take her home. Harden finally agreed and drove towards M.P.'s neighborhood but turned into an apartment complex instead and parked again. M.P. told him she wanted to leave, and he again said that he wanted to perform oral sex on her. She asked if that was the only way he was going to let her out of the car and he said yes. So, thinking that was the only way out, she agreed. He then climbed over into the passenger side of the SUV and touched M.P's vaginal area with his fingers and then his mouth. While he was doing so, M.P. told him he was "forcing it" and that she did not want him to do it.

Harden then climbed back over to the driver's seat and moved the SUV to a darker and more secluded parking space. He then climbed back into the passenger side and tried to remove M.P.'s shorts. When M.P. resisted and tried to reach over and honk the horn, Harden punched her on the left side of her face. Harden then pulled her shorts down and had sexual intercourse with her.

Afterwards, on the way back to M.P.'s residence, Harden was pulled over by a Douglas County Sheriff's deputy because the SUV had no license plates. When Deputy Christopher Yort approached the driver's side of the SUV, he observed M.P. in the passenger seat, sobbing and shaking. She told him she just wanted to get out of the SUV, and after she exited, Yort noticed that her shorts were unbuttoned and her belt was undone. M.P. described to Yort what happened and became more upset as the conversation continued. She told Yort that Harden had punched her and then "raped" her. Yort observed that M.P.'s left eye was red and swollen. Another Douglas County Sheriff's deputy responded to Yort's call for backup and also noticed that M.P. appeared upset and was crying. M.P. went to the police station for questioning and then to the hospital for a sexual assault examination. Harden was also questioned by police and admitted to having sexual intercourse with M.P. but claimed it was consensual. Harden had no explanation for the injury to M.P.'s face. Harden explained that M.P. was crying and distraught at the time of the traffic stop because she told him she had a warrant out for her arrest. Upon investigation, however, Yort determined there was no warrant.

Based on the events of May 9, 2014, Harden was charged with first degree sexual assault. A jury trial was held in March 2015. At trial, Yort and M.P. testified generally as to the events described above. The jury also heard testimony from Krystle Adams, the sexual assault nurse examiner who performed M.P.'s examination. Adams said that during the examination, M.P. was visibly shaken, crying, and anxious. Adams observed significant bruising and swelling to the left side of M.P.'s face, specifically to the left of her eye and upper cheek area. Adams testified that M.P.'s explanation for the cause of the injury was consistent with the injury she observed, and the amount of swelling indicated to Adams that the injury had occurred within the previous few hours.

Adams also conducted a vaginal examination on M.P. and testified that she did not find any injuries. The State then attempted to ask Adams for her expert opinion, based on her experience and training as well as research and literature, as to the percentage of sexual assaults cases in which no vaginal injuries are found. Harden objected, first arguing that the research and literature and Adams' observations from other examinations she has performed were not relevant. He then argued that he had no notice that Adams was an expert or that she was going to be asked give an

expert opinion. He claimed that without notice that she was an expert, he could not properly cross-examine her or find a rebuttal witness to refute her testimony. Harden therefore requested a motion in limine precluding Adams' testimony. The district court overruled the objection and motion in limine, ruling that Adams could provide her expert opinion as to whether the absence of any injuries negates forcible penetration, but it declined to allow her to provide any percentages or number of cases involving no injury. Adams then testified over objection that lack of injury was still consistent with sexual assault and that she does not very frequently find injury during sexual assault examinations.

The jury found Harden guilty of first degree sexual assault. He was sentenced to 10 to 20 years' imprisonment. He now timely appeals to this court.

## ASSIGNMENTS OF ERROR

Harden assigns that the district court erred in denying his motion in limine challenging Adams' testimony and in finding sufficient evidence to support the conviction.

## STANDARD OF REVIEW

The standard for reviewing the admissibility of expert testimony is abuse of discretion. *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

Harden argues that the district court erred in overruling his motion in limine and allowing Adams to give an expert opinion. Although the court treated the objection as a motion in limine and Harden's assignment of error refers to a motion in limine, we note that the objection was based on lack of disclosure, and we therefore review whether the court erred in overruling the objection.

In his brief, Harden argues that Adams was not properly qualified as an expert under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993) and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). We find this argument has not been preserved for appeal.

On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered at trial. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id.* More specifically, if a party does not object at trial to a witness' qualifications to testify as an expert, that party waives the right to assert on appeal that allowing the witness to testify as an expert was prejudicial error. See *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001). See also *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882

(2010) (requiring party objecting under *Daubert/Schafersman* to do so with enough specificity to alert the court as to what is being challenged).

In the instant case, when the State began laying foundation to elicit an expert opinion from Adams, Harden first objected on relevance grounds and then on the grounds that Adams had not been disclosed as an expert and he was unaware of the basis of her opinion. The district court allowed Adams to state her opinion as to whether the absence of injury negates forcible penetration. Harden cannot now be heard to complain that Adams was not qualified to testify as an expert witness when he failed to object to her opinion on that basis at trial.

In his reply brief Harden contends that his objection based on lack of disclosure encompasses Adams' qualifications, but we do not agree. Under Neb. Rev. Stat. § 27-103 (Reissue 2008), error may not be predicated upon a ruling which admits evidence unless a timely and specific objection appears on the record. To sufficiently call specialized knowledge into question under *Daubert* and *Schafersman* is to object with enough specificity so that the court understands what is being challenged, and the objection, which generally takes the form of a pretrial motion, should include or incorporate all bases for challenging the admissibility, including any challenge to the qualifications of the expert. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). Objections on the grounds of foundation and failure to comply with a criminal discovery statute are insufficient to preserve for appellate review the issue of the witness' qualifications under *Daubert/Schafersman*. See *State v. King*, 269 Neb. 326, 693 N.W.2d 250 (2005). We recognize Harden's argument that because Adams was not properly disclosed, he was hindered in his ability to object to her qualifications. We note that Adams was disclosed as a sexual assault nurse examiner. Furthermore, the State's line of questioning was obviously to elicit her opinion on whether forcible penetration always resulted in vaginal injury. The district court excused the jury for the day and held a sidebar to address Adams' proposed testimony. Harden had ample opportunity during both the examination and the sidebar to raise a *Daubert/Schafersman* objection, but instead focused his objections on relevance and notice. Because Harden did not specifically object to Adams' qualifications at trial, he may not raise that issue on appeal.

Harden further claims the court erred in admitting Adams' expert opinion because the State failed to disclose that she would be asked to give an expert opinion or the basis for her opinion. We find that Harden has waived this argument.

A defendant in a criminal proceeding has no general due process right to discovery. *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012). Due process does require the State to disclose exculpatory evidence to a defendant, but the State is not under a constitutional duty to disclose all information that might affect the jury's verdict. See *State v. Pieper*, 274 Neb. 768, 743 N.W.2d 360 (2008). Upon a defendant's proper request through discovery procedure, however, the State must disclose information which is material to the preparation of a defense to the charge against the defendant. See *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002).

In Nebraska, discovery in criminal cases is governed by statute. See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). Prior to trial, Harden filed a motion for discovery. The court granted the motion, ordering mutual and reciprocal discovery pursuant to statute. Discovery statute Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2014) governs our analysis and provides in relevant part that following a proper discovery request, the State has a statutory obligation to disclose the results

and reports of physical or mental examinations, and of scientific tests, or experiments made in connection with the particular case, or copies thereof. § 29-1912(1)(e). The State provided Harden with Adams' report prior to trial as it was required to do under § 29-1912(1)(e), but Harden claims the State was also required to disclose Adams' status as an expert witness, that she would be asked to give an expert opinion at trial, and the basis for her opinion.

The Nebraska Supreme Court has repeatedly held that when the prejudice caused by belated or insufficient disclosure could be remedied by a properly granted continuance, a defendant's failure to request a continuance waives any rights he or she may have pursuant to § 29-1912. See, *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016); *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999). The Supreme Court recognized that a continuance will not cure every instance of belated disclosure, citing examples such as when evidence has been lost or destroyed or witnesses have gone missing. See *State v. Lotter, supra*. But nonetheless the court held that when a continuance will cure the prejudice caused by a belated disclosure, a continuance should be requested by counsel and granted by the trial court. See *id*.

In the present case, Harden argued at trial that he was prejudiced by the State's failure to disclose Adams' opinion prior to trial because he was unable to properly cross-examine her or secure a rebuttal witness to refute her testimony. In *State v. Lotter, supra*, the Supreme Court found that a continuance would have remedied any prejudice resulting from the State's delay in disclosing a co-conspirator's sentencing document because it would have given the defendant's counsel time to analyze the document and recall the co-conspirator, who was still available for further cross-examination. Likewise here, a continuance would have allowed Harden's counsel time to prepare additional cross-examination of Adams and obtain a rebuttal witness to refute her testimony. Therefore, even if additional disclosure was required, because Harden failed to seek a continuance, he has waived any rights to which he otherwise would be entitled pursuant to § 29-1912.

Harden argues that the district court erred in finding sufficient evidence to support his conviction. We disagree.

Harden was charged with first degree sexual assault under Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2008). According to this statute, a person commits first degree sexual assault if he or she subjects another person to sexual penetration without the consent of the victim. Sexual penetration includes sexual intercourse and cunnilingus. Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2014). Accordingly, the State was required to prove that Harden subjected M.P. to sexual penetration without her consent.

The elements of penetration and Harden's identity appear to be undisputed. Harden admitted to Yort that he engaged in sexual intercourse with M.P., and M.P. identified Harden as the man she was with on May 9, 2014. The issue in this case is whether the act occurred with or without M.P.'s consent. Thus, our inquiry will be limited to whether the State adduced sufficient evidence so that a rational juror could have found that the sexual penetration occurred without M.P.'s consent.

M.P. testified that she repeatedly refused Harden's requests to perform oral sex on her but that she ultimately acquiesced because she believed that was the only way Harden would take her

home. Despite this, when Harden was engaging in the act with her, she told him he was "forcing it and [she] didn't want it." M.P. indicated that she told Harden at least ten times that she wanted to go home and that she did not want to engage in any sexual acts with him.

As to the intercourse, M.P. testified that when Harden climbed over to the passenger side of the vehicle and tried to take off her pants, she reached over to honk the horn and he punched her in the face. She said she continued to try to push him away and was crying as he was assaulting her.

There was also circumstantial evidence presented that corroborated M.P.'s version of the events. Both police officers observed M.P. to be very upset and crying. Yort said she was shaking, her voice was cracking, and she told him that Harden had punched her and "raped" her. Adams also observed that M.P. was visibly shaken, crying, and anxious during the examination and had significant bruising and swelling on her face that appeared recent and consistent with M.P.'s explanation of the cause of the injury. Harden had no explanation for M.P.'s facial injury and claimed that she was upset because she told him she had a warrant out for her arrest. The police determined that there was no warrant for M.P.'s arrest, and at trial, M.P. denied making that statement to Harden.

Harden argues that the police failed to sufficiently investigate the case and failed to confirm any facts beyond M.P.'s version of events. However, the testimony of a victim of first degree sexual assault does not require corroboration. See Neb. Rev. Stat. § 29-2028 (Reissue 2008). Harden further argues that M.P.'s testimony is unreliable and insufficient upon which to base his conviction because it contained inconsistencies. What he is asking us to do through his argument is reweigh the evidence presented to the jury, which we cannot do. See *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The jury found M.P.'s testimony credible, and we do not reweigh this finding on appeal. Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient for the jury to find Harden guilty of first degree sexual assault.

## CONCLUSION

We conclude that Harden failed to preserve his challenge to Adams' expert opinion on appeal and that the evidence was sufficient to support the conviction. We therefore affirm.

AFFIRMED.